No. 707

First Circuit

SPARKS v. HANAGRIFF

(December 1, 1930. Opinion and Decree.)
(January 26, 1931. Rehearing Refused.)
(March 2, 1931. Writs of Certiorari and Review Refused by Supreme Court.)

Hermann Moyse, of Baton Rouge, attorney for plaintiff, appellant.

B. R. Miller and J. Y. Sanders, Jr., of Baton Rouge, attorneys for defendant, appellee.

MOUTON, J. At the request or invitation of Mr. Hanagriff, defendant, Miss Sparks, plaintiff, Miss Pitts, and Mr. Smith, Sunday morning, June 16, 1929, had gone out on a fishing trip a few miles from the city of Baton Rouge. On their way back, about 4:30 in the afternoon, while driving over the Port Allen highway, the auto in which the parties were riding was turned over and was practically demolished. Miss Sparks was severely injured, and brings this suit for damages against Mr. Hanagriff, who was driving the car.

The lower court rejected the demand, Miss Sparks appeals.

The defendant, it is shown, passed ahead of several cars, and, in trying to pass ahead of an auto which Mr. Gunn was driving, defendant's auto ran into some loose gravel, causing it to capsize, and inflicting the damages complained of.

Hanagriff, the defendant, says that Mr. Gunn was ahead of him; that, when approaching his car to pass ahead, he blew his horn twice; that Mr. Gunn was driving practically in the middle of the road and swerved to his right; that he had "plenty of room to go by him," but that Mr. Gunn

abruptly turned his car to the left, and, to avoid hitting him, he then swerved his auto to the left, and, in attempting to straighten his car, he applied his brakes, the car went into the ditch and was overturned.

Defendant says he had 10 or 12 feet to pass on the left side of the Gunn auto of which there was about 3 feet of loose gravel, extending from the ditch to the hard surface part of the gravelled roadway. He was traveling, according to his testimony, between 40 and 45 miles an hour.

Mr. Gunn says he was coming toward Port Allen; he imagines between 40 and 45 miles an hour, that he was first apprised of something behind him by a scuffling noise in the gravel, when one of the ladies who was riding with him said: "My God! There is a car turned over."

He testifies positively that he did not hear the sounding of a horn by Hanagriff, and he is also certain that he was traveling at the time on the right side of the road. He was then asked the following questions, and gave the answers thereto, which we shall quote:

"Q. Did you at any time leave the right-hand side of the road?
"A. Not that I remember.
"Q. Ought not you to remember that proposition?
"A. Yes. If I had seen anything to cause me to swerve I would remember it."

After counsel stated to him that he wanted to know definitely whether he had veered over into the left side of the road, Mr. Gunn said:

"No, sir, not to the left side of the road. I was driving on the right."

After he had stated that he had "plenty of room" to pass without running into the loose gravel, counsel then propounded to him this question:

"Q. Mr. Hanagriff has just sworn that you turned sharply to the left and ran into the left side of the road. What have you to say to that?
"A. I don't think I did."

Then upon being asked if he was not positive that he had not veered to his left side, abruptly, he answered, "Yes"; he was.

It will be observed that Mr. Gunn was certain that he had not heard Hanagriff blow his horn, and was positive that he was driving on the right-hand side of the road. He was, however, in doubt, at first, and could not remember if he had at any time left the right-hand side and as to whether he had seen anything ahead to cause him to swerve to his left. Again when he is asked if he had turned to his left, he answers: "I don't think I did." He finally, upon being pressed by counsel for plaintiff, gives definite answers to the questions asked, as hereinabove stated.

Then again, when asked if a lawyer had not advised him that he could be held liable if he had caused the accident, he answers:

"I don't think he did; I do not remember."

Mr. Smith, witness for plaintiff, was sitting on the back seat of the Hanagriff car. He says:

"When I noticed anything in particular was when Mr. Hanagriff applied his brakes, and the car was very near the car he was attempting to pass."

He testified that, as he was sitting on the rear seat, he could not say if the Gunn car had abruptly turned to the left, and

that he was not paying any attention to what was going ahead. There is nothing in the foregoing statement of that witness to contradict the testimony of Hanagriff, above quoted, to the effect that Gunn had abruptly swerved to his left, which compelled him to apply his brakes, and caused the turnover in the loose gravel. The fact is that Smith said in his testimony that, when Hanagriff's car was near the other when he was attempting to pass ahead of it, that he applied his brakes, and that the rear portion of his car was tangled up in the gravel, and rolled over in the ditch. This latter statement agrees precisely with the way Hanagriff described the capsizing of his car.

Counsel for plaintiff, after stating to his witness Smith that he presumed he had heard when Hanagriff had said that Gunn's car swerved to the left just as he tried to pass, asked Smith if that was correct? Smith answered:

"As to whether it abruptly swerved to the left or not I could not say: but I do know that when Mr. Hanagriff applied his brakes there was not so much clearance for him to get by."

Here it will again be noted that he does not contradict the statement made by Hanagriff that Gunn turned to his left. The following part of Smith's foregoing reproduced statement must be observed where he says that when Hanagriff applied his brakes, "there was not so much clearance for him to get by." The proof above referred to from both Hanagriff and Gunn shows that both had "plenty of room" on either side of the roadway to operate their respective cars. As Smith says that when Hanagriff applied his brakes he did not have so much "clearance to get by," it is logical to conclude that Gunn had turned

his car to the left side and was obstructing his passage. Smith could not say that he had turned abruptly, but his testimony is corroborative of Hanagriff's statement to the effect, at least. that Gunn had swerved to his left.

Miss Sparks, plaintiff, says she had not particularly noticed the Gunn car, and could not say if it had swerved ahead of the Hanagriff car prior to the impact.

Miss Pitts, the other occupant of the Hanagriff car, did not testify in the case.

Mr. Smith testified that Mr. Hanagriff sounded his horn several times, but could not say if he had for the Gunn car, and said:

"I rather think he did."

Miss Sparks testified that she could not say if Mr. Hanagriff had blown his horn for the Gunn car.

Mr. Hanagriff says that he blew his horn twice on approaching the Gunn car, Mr. Smith says he blew it several times before in passing other cars, and Miss Sparks says she could not say if he had or not, and Mr. Gunn says he did not hear it.

The preponderance of the evidence is therefore. in favor of Mr. Hanagriff on this question, and it must therefore be held that he sounded the horn. If the lower court so believed—and there is nothing to indicate it did not, certainly not from the judgment rendered—on such an issue of fact, it is not for us to say that there was an error in its finding.

The vital issue in the case is as to whether Gunn suddenly turned his car to the left and compelled Hanagriff to apply his brakes, and, in attempting to straighten

his car, ran it into the loose gravel, thus causing the accident.

Hanagriff is very positive that Gunn acted in the manner stated, which he says by his fault was the proximate cause of the accident.

Smith, though he could not state that Gunn abruptly turned his car to the left, said, as we have before remarked, that he had not left much clearance on the left side of the roadway for the passage of Hanagriff's car.

The answers on these vital questions were reluctantly given by Gunn and are of such a character that the lower court must have accepted the version of the occurrence as related by Hanagriff, and indirectly supported by the testimony of Smith. The court, we must assume, found that the barring of the passage of Hanagriff's car by Gunn was the proximate cause of the accident.

Under the provisions of Act 296, 1928, p. 628, Hanagriff had the right to travel on the Port Allen highway at the rate of 45 miles an hour, particularly during the daytime. The fact is that Gunn was, according to his own statement, traveling at about that rate of speed. The proof is that Hanagriff had passed other cars before he reached Gunn's car.

Mr. Hogue, one of plaintiff's witnesses, says Hanagriff passed ahead of him like a flash, but this answer had been adroitly suggested to him by counsel's question.

Miss Graham, another witness for plaintiff, says defendant blew his horn, that she pulled over to her right, and that he was going about 40 or 45 miles an hour.

It is shown that Hanagriff had been ad-

monished by one of the occupants of his car that he was going too fast, that he had heeded the advice, had slowed down, and thereafter resumed his speed.

Miss Sparks estimated his speed at the time of the accident at 55 miles an hour.

The proof is that he had caught up with the Gunn car when, in trying to straighten his car, it rolled over in the ditch, as hereinabove explained. It is therefore fair to conclude that he had speeded up his car to about 50 miles an hour, as he had caught up with the Gunn car, which was going between 40 and 45 miles.

He was therefore traveling at a speed exceeding by about 5 miles the limit fixed by our statute on the subject.

Berry on Automobiles (6th Ed.) vol. 1, sec. 230, p. 202, says:

"That although an automobile may be traveling at a rate of speed prohibited by law, unless the excessive speed of the car was the proximate cause of an injury complained of the owner is not liable for such negligence."

In section 227, same volume, this author says that the mere proof that defendant was violating the law "raises no presumption that his negligence proximately caused the injury."

In Hudson v. Jackson Brewing Company, 4 La. App. 549, the court held that a speed exceeding the maximum permitted by a city ordinance is not "negligence per se, and when it appears that the excessive speed was not the cause of the accident no liability in damages arises therefrom."

This principle was recognized in Collier v. Frank Varino & Co., 153 La. 636, 96 So. 500; Smith v. Interurban Transp. Co., 5 La. App. 704.

Driving at a rate of speed exceeding the statutory limit, as we understand the law, is not in itself determinative of responsibility. The fault or negligence which is the proximate cause of the accident or injury is the criterion of liability in such cases.

In arriving at this conclusion, we have not lost sight of section 5 of Act 296 of 1928, where it says that a driver of a vehicle on the highway, in regulating his speed, must have due regard to the traffic, surface, and width of the highway.

Here it is shown by both Hanagriff and Gunn that they had ample room on each side of the highway for the safe passage of their cars, with due consideration of the fact that there was about 3 feet of loose gravel on the side of the roadway. In connection therewith we may state that there is no proof that the traffic on the highway at that time nor the condition of the surface of the road could have caused the apprehension of any danger which could have arisen from such factors. The fact is that defendant, before getting to the Gunn car, had successfully passed other cars, and without apparent danger or trouble as far as the record discloses.

The clear-cut issue is as to whether defendant's way was blocked by the turn to the left of the Gunn car. There is no suggestion or intimation in the pleadings of any concurrent negligence on the part of defendant and no proof to that effect. The preponderance of the evidence shows, as hereinabove stated, that Gunn was at fault when, by veering to his left, he barred defendant's right of way, and that his negligence was the sole proximate cause of the accident.

The solution of this issue depended altogether on questions of fact in which the credibility of some of the witnesses played an important part. On such issues the appellate courts will not interfere except in cases when the lower court has fallen into a manifest error which we fail to find in this case. On the contrary, we find that the preponderance of the evidence supports the judgment dismissing plaintiff's suit, and it is therefore affirmed, with cost.

ELLIOTT, J. (dissenting). As stated in the opinion of the majority of the court, Miss Sparks, the plaintiff, was injured as the result of an effort on the part of Hanagriff, defendant, to pass an automobile ahead of him which was being driven by a Mr. Dunn.

Mr. Hanagriff, accompanied by the plaintiff, as her host and escort, and by another young couple, were on their way home from a trip made in his automobile, driven by himself.

The duties of a host toward his guest, as summarized in Jacobs v. Jacobs, 141 La. 272, 74 So. 992, 993, L. R. A. 1917F, 253, are as follows (I quote from the syllabus):

"The driver's duty and responsibility to his guest in an automobile is merely to be careful and avoid committing any act of negligence or imprudence that might add to or increase the ordinary danger of the occupation.

"The responsibility of the driver of an automobile for the safety of his guest in the car is not limited to his duty to abstain from acts of gross or willful negligence, but demands that he avoid the ordinary negligence or imprudence referred to in the Civil Code."

In addition to the duty as above recognized and based on the Civil Code, we have the statutory provision Act 296 of 1928, sec. 4:

"Any person who drives any vehicle upon a highway carelessly and heedlessly in

willful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger any person or property, shall be guilty of reckless driving," etc.

Section 5(a):

"Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing. and no person shall drive any vehicle upon a highway at such speed as to endanger the life, limb or property of any person.

"(b) Subject to the provision (a) of this section and except in those instances where a lower speed is specified in this Act, it shall be prima facie lawful for the driver of a vehicle to drive at a speed not exceeding the following but in any case when such speed would be unsafe it shall not be lawful."

Then under paragraph 8 it is said:

"Forty-five miles an hour under all other conditions."

Hanagriff, after passing some cars, overtook and came up behind Mr. Dunn, who, when overtaken, was himself driving from 40 to 45 miles an hour. To overtake him, Hanagriff was necessarily going faster than 40 or 45 miles an hour and faster than the law permits.

Defendant, upon coming up behind Dunn, blew his horn to notify him, as he was near the middle of the road, to get over to the right, so that he (Hanagriff) could pass to the left of him.

Dunn testified that he did not hear defendant's horn and did not know that he was behind him; that the first he knew about it was when somebody in his car called out that a car had overturned, etc.

It appears, however, that Dunn, while defendant was behind him, and while going as above stated, did move over to the right, apparently responsive to defendant's horn, upon which defendant undertook to pass him, and, while defendant was going no doubt at his utmost speed and likely between 50 and 60 miles an hour, because, if going at any less speed, he could not have passed except after running on the left-hand side of the road and parallel with Dunn for too great a distance for safety, it appears that Dunn moved back toward the middle of the road, which immediately created a danger, and defendant, to avoid, he says, striking Dunn, sought to stop, and for that purpose applied his brakes, upon which his car became uncontrollable, one of his wheels got into the ditch, another in loose gravel, with the result that his car overturned, injuring the plaintiff.

What impresses me is the reckless, willful risk and chance which Hanagriff took in trying to pass a car going from 40 to 45 miles an hour by speeding up fast enough to run by it, when he did not know at the time whether the driver of the car he was about to try to pass had heard him and had swerved to the right for the purpose of making room for him to pass or not. He no doubt thought it had been done for that purpose, otherwise he would not have attempted to do as he did, but he did not know it, and in justice to his guest and in the discharge of that due care which she had a right to expect of him as her host and the driver of the car, he should not have exposed her to the peril and risk of the chance, going at such unusual speed, that the driver ahead had not heard him and might, unaware of his presence behind and that he was endeavoring to pass him, turn back to the middle

of the road and thereby bring about the overturning of defendant's car.

The situation called on defendant to wait and take no chances at the speed he was compelled to drive in order to pass Dunn. He should have waited until he could see that the passing could be accomplished, without placing his guests in involuntary peril and jeopardy of losing their lives or suffering great bodily harm. Defendant did not take an ordinary risk such as may be regarded as incident to careful and prudent driving, but he willfully ventured to do a dangerous thing which under the circumstances and situation was perilous in the extreme.

It must be considered that, when plaintiff trusted herself to his care, she did so with the understanding that he would drive carefully and not subject her to such unnecessary risks as his effort to pass this car involved her in. The law section 14(a) provides:

"The driver of any vehicle overtaking another vehicle proceeding in the same direction shall pass at a safe distance to the left thereof," etc.

"(b) The driver of any overtaking motor vehicle * * * shall give audible warning with his horn," etc.

Section 15(a):

"The driver of a vehicle shall not drive to the left side of the center line of a highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible," etc.

These provisions should be applied in harmony with the provisions in sections 4 and 5 requiring "due caution and circumspection," driving at all times at a "careful and prudent speed," having due regard to the conditions then existing. All the provisions of the act in question intend care and prudence in driving and speed, and which, according to my conclusion, the defendant did not observe on the occasion in question.

It does not seem to me to be proper to excuse the defendant under the showing made in this case by finding that Dunn blocked the way and was at fault for having done so, and that his negligence was the sole and proximate cause of the accident, when the primary fault was defendant's attempt to pass Dunn, under circumstances which made it imprudent and reckless to do so. Dunn is not a party to this suit. If he had been made a party, it may be that he would have clearly shown that he did not know that Hanagriff was behind him and trying to pass him, and, if he did not, then he was in no way at fault for moving back toward the middle of the road at the speed he was going. The question, of course, is whether defendant was at fault, and if his car was overturned as a result of his fault in driving and attempting to pass a car ahead of him at such speed as was necessary for him to drive in order to pass, and when in order to pass he was compelled to drive at such speed that his car could not be controlled when he discovered that he was about to be struck by the car he was endeavoring to pass, and to escape being struck it was necessary to stop after he had gotten himself into such a place that it could not be done in safety.

The plaintiff was greatly injured, and I think it appears to have been manifestly due to the fault of the defendant. I therefore dissent.