## GOFF v. SOUTHERN COFFEE MILLS, Limited.*
### No. 14304.

Court of Appeal of Louisiana. Orleans.

Nov. 28, 1932.

Gordon Boswell, of New Orleans, for appellant.

H. W. Robinson and H. M. Robinson, both of New Orleans, for appellee.

JANVIER, J.

Oscar F. Goff received fatal injuries in an intersectional automobile collision. He was driving a Ford sedan, which was struck by a truck owned by defendant and operated by one of its employees while acting within the scope of his employment.

Mrs. Goff, seeking restitution for the loss she sustained by reason of being deprived of the love, affection, and companionship of her husband and the financial support he would have continued to afford her had he lived, alleges that the driver of the defendant's truck was negligent in many particulars and that her said husband in no way contributed to the cause of the accident.

The matter was tried below by jury, and a verdict for $12,500 was rendered. Judgment having been entered in accordance with the said verdict, defendant has appealed.

We find from the record that defendant's truck was on Oak street, and was proceeding in a downtown direction and that the Ford sedan, operated by Goff, was on its way out Leonidas street toward Lake Pontchartrain, so that the Ford approached the intersection from the right-hand side of the driver of the truck. From this circumstance counsel for plaintiff argues that Goff, under Ordinance No. 7490, C. C. S., par. (c), § 7, art. 1, had the right of way, and that the failure of the truck driver to yield was the proximate cause of the accident. It is also contended that the truck was proceeding at a rate of speed in excess of that permitted by law and by the dictates of prudence, and that there was causal connection between the said excessive speed and the catastrophe.

Defendant's attorney seeks to convince us that the record shows that the speed of the truck was not excessive, but that the real cause of the trouble was the fact that Goff himself was at fault in operating his car at a dangerously fast rate and in driving it into the intersection directly in front of the oncoming truck, and it is stoutly maintained that the right of way was with the truck and not with the Ford sedan.

This last contention is based upon the alleged applicability to that street intersection of paragraph (a) of section 7 of article 1 of the ordinance, which accords to vehicles on "streets with street car tracks" the right of

way over vehicles approaching on intersecting streets.

It is admitted that there were street car tracks on Oak street, but it is contended that, inasmuch as many months prior to the accident the operation of street cars on that street had been discontinued, the portion of the ordinance relied on by defendant is inapplicable. We deem it of utmost importance to determine which of the two vehicles was entitled to the right of way, and shall therefore first consider the antagonistic contentions on this question.

The facts on this question are not in dispute. A year or so prior to the date of the accident, street car service had been discontinued on Oak street, but the tracks had been allowed to remain in the roadway, and there seems to be nothing about their condition to indicate that street cars are not being operated 'over them. Busses operating by trolley wires, but run on rubber-tired wheels, are run on the street as substitutes for the street cars.

The written law on the subject, as contained in the ordinance, is very plain, and there can be no doubt that vehicles on streets having street car tracks are accorded superior rights over those on intersecting streets, and that it is only where streets are of equal rank by reason of both being so-called right of way streets, or both being non right of way streets, that consideration need be given to the other paragraph of the same section, under which it is determined which vehicle shall have the right of way "on all other streets." Paragraph (c).

There can be no doubt that the reason which prompted the framers of the ordinance to give to vehicles on streets having street car tracks a right superior to those on intersecting streets was a recognition of the difficulty of controlling street cars and of bringing them to a prompt stop and the impossibility of turning them aside from impending danger, and that these considerations led to the declaration that vehicles on other streets should exercise greater caution in entering such streets having car tracks on them. It might therefore seem logical to say that, when the street cars are removed, the danger which was sought to be avoided is no longer present, and therefore the ordinance should no longer apply. But such a holding would create an even more dangerous result, because it would place upon all drivers operating either on or across such a street the duty of ascertaining whether street cars in fact operate over any particular line of tracks. If a person operating his automobile on such a street, not knowing that street car service has been discontinued, relies on his belief that the right of way is with him by reason of the presence on the street of street car tracks, it is very apparent that a very dangerous situation will result at an intersection across which some other person may be driving his car with knowledge of the fact that street car service has been discontinued, and that therefore the two streets are of equal rank, and that he (the second mentioned person) is entitled to the right of way by reason of the other feature of the ordinance.

It will be noted that those who framed the ordinance made the right of way to depend, not upon the actual operation of street cars, but merely upon the presence of tracks.

■■ It is argued that it was not intended to distinguish between street cars and street car tracks, and that the framers of the ordinance used the words "street car tracks" figuratively to mean street car lines in operation. But we do not feel that we are privileged to interpret plain unambiguous language where no manifestly erroneous or plainly absurd result will follow the literal meaning, which is unequivocal. Here it is true that the danger of street cars is what caused the adoption of the particular rule under consideration, but the only way an automobile driver can tell whether there is danger of street cars is by the presence of the tracks, and it is safer to make one rule which must exist either until the ordinance is changed, or until the tracks are removed, so that any one may know, from the presence of tracks, where the right of way lies and may not be required to keep himself constantly informed with reference to what street car lines are in operation and which have been discontinued.

We conclude that the right of way was with defendant's truck.

■ On the upper river corner, which was the corner over which, had there been no obstruction to the view, either driver could, had he looked, have seen the other vehicle approaching, there was a large wooden building, which extended to the property line of both streets. This placed upon the drivers, particularly on the one who did not have the right of way, the duty of exercising extraordinary care before emerging into the intersection. Though there is some conflict in the evidence, we believe that it conclusively appears that Goff did not stop and did not look at a point from which he could have seen the truck approaching. Had he done so, it is inconceivable that he would have driven into the path of the on-coming truck. It may be that the truck was approaching at a speed in excess of that permitted by law, though the evidence on this point is clearly with the defendant, nevertheless, unless the speed was greatly in excess of the legal limit, Goff, had he looked and had he seen the truck coming, would have realized the danger of emerging from his position of safety.

Had the speed of the truck been so high as to have made its approach so rapid that even one exercising care would have been misled, by the fact that when he first saw the truck it was a great distance away, into believing

that there was time to cross, then a different situation would have been presented. Such a state of facts was found to exist in Bethancourt v. Bayhi (La. App.) 141 So. 111.

Counsel for plaintiff argues that the last above cited case is authority in support of his contention that, even if there was a legal duty in Goff to stop before entering the street, his failure to do so should not prevent recovery, unless there appears to have been causal connection between the failure to stop and the ultimate disaster. This is true enough, but the situation in that case was vastly different from that which we find here. There the car which should have stopped and which failed to do so was approaching at a corner at which its driver could see far up the other street and could "plainly see that no other visible car, * * * if driven at a reasonable speed, was sufficiently near to make it hazardous for her to cross. * * *" 'Similarly, had Goff been able, while traveling at slow speed, to see far enough up Oak street to make certain that no car on that street was near enough, if driven at a reasonable speed, to strike him, then his failure to actually stop could have had no causal connection with the accident. Such, however, was not the case.

██ Even if we felt that the right of way was with plaintiff's husband under the various sections of the ordinance and that the car·tracks had lost their importance when the street cars discontinued operation on Oak street, still we feel that, for another reason set forth in the evidence and based on another portion of the ordinance, he should have stopped before entering Oak street. The evidence shows that, because of the great amount of traffic on Oak street, as compared with that operating over Leonidas street, the police department had, a long time prior to the fatal day, caused two large "stop" signs to be painted on Leonidas street, one on each side of Oak street. There can be no doubt that Goff, who had passed that corner almost every day for many months, if not years, was thoroughly familiar, not only with the dangerous situation which existed there, but also with the fact that those signs had been placed there by the police. Such signs are authorized by paragraph (a), section 12, of article VIII of the same traffic ordinance, in which paragraph it is provided that: "Drivers and operators of all vehicles are required to observe the instructions on the official traffic signs. These signs designate one-way streets, open zones, quiet zones, speed limits, limits of parking space, dangerous street intersections and other locations where caution should be observed."

Therefore, whether the truck had the right of way or not, Goff should have stopped before entering Oak street. He did not do so. His failure to do so was negligence, and there was causal connection between that negligence and the resulting accident. No further investigation into the charges of negligence made against the driver of the truck is necessary, because it is very evident that Goff himself was guilty of contributory negligence, and this contributory negligence bars recovery by his widow.

The judgment appealed from is annulled, avoided, and reversed, and plaintiff's suit is dismissed, at her cost.

Reversed.