## MARSIGLIA v. TOYE et al.
### No. 15007.

Court of Appeal of Louisiana. Orleans.
Jan. 21, 1935.

John May, of New Orleans, for appellants.

Cabral, Lenfant & Villere and Harry Cabral, all of New Orleans, for appellee.

WESTERFIELD, Judge.

This suits results from an intersectional collision of two automobiles. Mrs. Mary Mar-siglia, plaintiff and appellee, claims $9,160 for physical injuries and medical expenses alleged to have been occasioned as a result of Mrs. George Toye's negligent driving of her Hupmobile on February 5, 1933, when it collided with a Ford sedan owned by plaintiff and at the time of the accident driven by her son, Nutzie Marsiglia, in the intersection of Bienville and North Anthony streets. She joined the Travelers' Insurance Company of Hartford, Conn., Mrs. Toye's insurance carrier, as party-defendant. Defendants deny all charges of negligence and aver that the accident was due entirely to the gross negligence of the driver of the Ford car.

There was judgment below in plaintiff's favor against both defendants in the sum of $1,000. Defendants have appealed and plaintiff has answered the appeal asking for an increase in the award.

Bienville street is a through street, which, where the accident occurred, is 56 feet wide, and North Anthony street, which intersects it at right angles, is 26 feet wide. Both streets are paved. There is a large "Stop" sign painted on the pavement of North Anthony street, about 23 feet from the curb of Bienville street, on both sides of that thoroughfare.

The following provisions of the traffic ordinance of the city of New Orleans, No. 13,702, C. C. S., are of interest:

"Art. I (Definitions). * * * *Through Street.*—Any street so designated by the Commission Council and which street shall have right of way over all intersecting streets except boulevards."

"Art. III, Sec. 2. *Obedience to Traffic Signs and Signals.*—It shall be unlawful for the operator of any vehicle, or for the motorman of any street car, or for any pedestrian to disobey the instructions of any official traffic sign or signal placed in accordance with the provisions of this ordinance, unless otherwise directed by a Police Officer."

"Art. V, Sec. 15, sub-section (s).—*Vehicles Entering a Through Street.*—The operator of any vehicle who has stopped, as required by law, at the entrance to a through highway, shall yield to other vehicles within the intersection or approaching so closely on the through highway as to constitute an immediate hazard, but said operator having so stopped may proceed and other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicle which, having legally stopped, is pro-

ceeding into or across the through high-way."

"Art. VI, Sec. 8, Sub-section (a).—*Stop Before Entering a Through Street.*—The following boulevards, streets, and parts of streets, are hereby declared to constitute through streets * * * Bienville Street, from North Claiborne Avenue to City Park Avenue. * * *.

"Every operator of a vehicle * * * traveling on any street intersecting any through street or boulevard shall stop such vehicle * * * at the place where said street meets the prolongation of the nearest property line of said through street or boulevard, subject, however, to the direction of any traffic control sign or signal or any police officer at such intersection.

"The Commissioner of Public Safety is hereby authorized and required to maintain, or cause to be placed and maintained, on each and every street intersecting a through street or boulevard designated above, or at or near the property line of the through street or boulevard (and in addition thereto may place and maintain appropriate devices or marks in the roadway), such signs, devices or marks to bear the word 'STOP' and such signs to be located in such position and to be provided with letters of a size to be clearly legible from a distance of at least one hundred (100) feet along the street intersecting the through street. * * *"

The Toye car, traveling on North Anthony street, entered the intersection from the direction of Canal street and collided with the Marsiglia car, which was proceeding out Bienville street in the direction of Lake Pontchartrain. It is claimed that the driver of the Marsiglia car was solely responsible for the accident, in that he was driving very fast and failed to respect the right of way of the Toye car, which that car had gained by reason of its having almost completed the crossing of Bienville street before the Marsiglia car reached that point.

Nutzie Marsiglia testified that he was driving between 20 and 25 miles an hour and that the Hupmobile of Mrs. Toye was going at the rate of 15 miles an hour, and that, as soon as he realized the Hupmobile intended to cross his path, he drove to the left and applied his brakes, but was unable to avoid contact with the Hupmobile, which he struck on the right rear wheel and fender. Mrs. Toye testified that just after the accident Marsiglia admitted that he was going 35 miles an hour and that he justified that speed by saying that Bienville street was a speedway.

Marsiglia signed a statement prepared by an agent of the defendants, which, in some particulars, is not in accord with his testimony on the stand and of which much is made by opposing counsel as affecting his credibility. The only witnesses to the accident consisted of the occupants of the two cars, the two drivers, and the mother and father of Nutzie Marsiglia. They do not all agree in their estimates of the speed of the two cars, which is to be expected. However, we are satisfied that Marsiglia could not have been driving very fast, because very little damage was done to the Toye car, which was moved only a foot or two out of its course as a result of the impact. Mrs. Toye, when asked whether her car had been moved 2 or 3 feet by the collision, replied that she did not believe it had moved that far.

■ Whether the Toye car had pre-empted the intersection is doubtful. The weight of the evidence seems to be to the effect that the collision occurred in the middle of Bienville street, but, after all, the negligence of the driver of the Marsiglia car is important only if Mrs. Toye was without contributing fault, because it is conceded that Mrs. Marsiglia, being a passenger, was not chargeable with the negligence of the driver, her son, Nutzie Marsiglia.

Mrs. Toye's account of the accident is that before she entered the intersection she stopped at the point indicated by the "Stop" sign and looked to the right and left, but "saw nothing to prevent me from going over. So then I proceeded and, after I got about three-quarters past Bienville Street, Mr. Marsiglia hit me and I was thrown to the right side—to the left side—I was hit on the right and thrown to the left." When asked if she saw any automobiles approaching the intersection, she replied, "There were none," and when the question was repeated, answered. "No—there were none that I could see, I was going at 15 miles at the most, I was taking it over slowly."

■■ We find it impossible to understand how Mrs. Toye could have looked in the direction of the Marsiglia car without seeing it. If it was running very fast, it was most imprudent to attempt to cross its path; if slowly, it must have been very near the intersection and equally dangerous to attempt to "beat it across." If Marsiglia blew his horn, as he says he did, Mrs. Toye did not hear it, doubtless because of an impairment of her hearing, with which she is shown to have been afflicted. We do not intend to say that a driver crossing a right of way street

and colliding with a vehicle in the intersection must necessarily be negligent, whether he violates the traffic ordinance, or not, but we do believe that it would be an extreme case, such as the pre-emption of the crossing, under circumstances which would indicate that the driver entered the intersection when it was reasonably safe to do so, which would relieve him of the imputation of negligence. The mere fact that he had managed to cross more than half the width of the right of way street would not, of itself, be sufficient. He must have started to cross at a time when the condition of traffic on the right of way street was such that a reasonable person would be justified in the conclusion that he could traverse the intersecting right of way thoroughfare with safety. Under such circumstances, if a collision occurs with a vehicle on the right of way street, the fault rests solely with the driver of such vehicle, because it was reasonably apparent that his path was obstructed at a time when, with reasonable care, he could have prevented the accident. We are not oblivious of the fact that we have not always stated our views in this regard with the present clarity in the many cases in which we have discussed similar situations, and a realization of that fact impels us to more specific and, we hope, clearer statement.

We conclude that Mrs. Toye must have been mistaken in saying that she stopped before entering the intersection and that, as a matter of fact, she proceeded to cross in violation of the traffic ordinance. Under the circumstances, we cannot absolve her from all blame for the accident. In Burthe v. Lee, 152 So. 100, 104, a similar accident was considered by this court. In that case we said:

"While it is true that in his petition Mr. Burthe alleged that when he entered the intersection the other car was 'not less than 250 feet' away, and though it is also true that, had the other car been that far away, it would not have been negligence on Mr. Burthe's part to have proceeded, the true fact seems to be that he actually entered the intersection without looking into the direction from which the taxicab was approaching, and that he drove directly into its path when it was so near that it could no longer be stopped in time to avoid striking his car."

See, also, Mejheardt v. Reboul, 158 So. 235, and Jos. Chalona Co. v. Smith, 158 So. 237, decided by this court January 7, 1935.

Mrs. Marsiglia was allowed $1,000. Her injuries consisted of a fracture of the left humerus, or bone of the upper part of the arm, as a result of which she has an impairment of the flexion of her left hand, which prevents her from completely closing her fist, and a certain limitation in the movement of her elbow in that she cannot elevate it to a normal extent. The impairment in the function of the arm and hand is estimated by her physician to be about 25 per cent. of normal. There is no evidence that the impairment of function is permanent. The statement of her physician in answer to a question in this regard was to the effect that in a vast majority of similar cases the loss of function is regained. Her medical expenses amounted to $160. We believe the award of the trial judge was proper under the circumstances.

Consequently, and for the reasons assigned, the judgment appealed from will be affirmed.

Affirmed.