## JIMES v. FIDELITY & CASUALTY CO. OF NEW YORK et al. (COMMERCIAL STANDARD INS. CO., Intervener).*

### No. 5088.

Court of Appeal of Louisiana.
Second Circuit.

Oct. 10, 1935.

Blanchard, Goldstein, Walker & O'Quin and Herold, Cousin & Herold, all of Shreveport, for appellants.

Harry V. Booth, of Shreveport, for appellee.

H. B. Lingle, of Shreveport, for intervener.

TALIAFERRO, Judge.

The motorcycle of Barte Jimes and the Studebaker sedan of defendant Dr. A. A. Herold collided in the intersection of Line avenue and Dudley drive in the city of Shreveport, La., a few minutes after 2 o'clock the afternoon of October 28, 1934, and Jimes died from injuries to his body caused by the collision. His widow, Virginia C. Jimes, brings this action against Dr. Herold and his insurer, Fidelity & Casualty Company of New York, to recover damages to the amount of $25,000 on account of her husband's death, alleging that the accident and consequent death of Jimes were due exclusively to the carelessness, lack of care, and negligence of Dr. Herold.

To better understand plaintiff's allegations and her theory of the case, it is well here to say that Line avenue is one of the main thoroughfares of the city of Shreveport, and runs northerly and southerly. It is 30 feet wide between curbs. Traffic thereon by law has a right of way over that on Dudley drive, 26 feet wide, which runs easterly and westerly, crossing Line at right angles. Dr. Herold was driving south with the right (west) wheels of his car on or very near the west rail of the street car track, which is 13 feet from the west curb of the avenue. Jimes was on Dudley drive, approaching the intersection from the west. He stopped at or about the white "Stop" line across Dudley, 13 feet from the west side of Line.

It is specifically alleged that at time of and immediately prior to the collision Dr. Herold was driving his car at an excessive rate of speed, more than 50 miles per hour, in violation of the laws of the city

*Rehearing denied Nov. 6, 1935.

of Shreveport; that he failed to grant Jimes the right of way, at and across the intersection, after he had legally entered same a substantial distance ahead of defendant's car; that he was driving his car on his wrong side of Line avenue; that he was also negligent by not giving any signal or warning of his approach to the intersection, and was not keeping a proper lookout for traffic thereat, and was further guilty of negligence by not having his car under adequate control; that all of said acts of negligence on the part of Dr. Herold brought about said accident and consequent death of Jimes, and constitute the proximate cause thereof. In the alternative, it is charged that defendant had the last clear chance of avoiding the accident, " * * * since Line Avenue was clear and unobstructed on the west side therof, that is the said defendant Herold's right hand side thereof, and that had he proceeded on the west side of Line Avenue, or merely veered his car a few feet to the west side thereof, said accident would not have occurred, and your petitioner especially pleads the 'last clear chance' as an additional ground of recovery against the defendants herein."

Defendant Herold admits the accident and death of Jimes, but denies that said accident is attributable to any negligence or carelessness on his part. He admits that the actual collision occurred on the east (his left) side of the center of the intersection, but avers that he was forced to quickly drive his car there in his effort to avoid a collision with Jimes' motorcycle, which suddenly emerged from Dudley drive, at a high rate of speed, and turned into the intersection in front of his car proceeding south; that had he not veered his car to his left he would have violently run into Jimes' motorcycle head-on; that his efforts to avoid such a collision were necessary because of the emergency suddenly arising from Jimes' own negligent act in driving into the intersection ahead of him; that his own car was run into by the motorcycle. He avers that he is informed and believes, and therefore alleges, that at time of the accident Jimes was in a semicomatose condition due to a reaction of a large dose of insulin, and that it was gross negligence on the part of Jimes to drive a motorcycle on the streets when under such influence.

The insurer's answer is virtually the same as that of Dr. Herold, plus a charge of contributory negligence against Jimes in that he did not stop for a sufficient length of time at the entrance of Line avenue, and entered same without due regard or attention to traffic, and in driving his motorcycle while under the influence of insulin.

Barte Jimes, when injured was an employee of and acting for the Glenwood Drug Company of Shreveport. His widow was entitled to and was paid compensation by Commercial Standard Insurance Company of Dallas, Tex., the drug company's insurer. It also paid doctors' and sanitarium bills and funeral expenses amounting to $372.40. That company intervened in the present suit and prayed that in event plaintiff should recover herein that judgment be rendered in its favor and against her for all amounts paid out by it as insurer of the drug company on account of or in connection with the injury, death, and burial of Jimes.

The case was tried with jury prayed for by plaintiff. From a verdict and judgment of $5,000 against Dr. Herold and the insurance company in solido, and a verdict and judgment for same amount against Dr. Herold alone, they prosecute appeals to this court. There was also judgment in favor of the intervener, as prayed for by it, against plaintiff. No appeal is prosecuted therefrom; no complaint is here raised as to its correctness. Of course its effectiveness depends upon the outcome of plaintiff's suit.

Dr. Herold and a negro woman, half a block north of the intersection, are the only living eyewitnesses to the collision. This woman testified that the doctor's car was going at a fast rate of speed, on his left side of the street, when it passed her, and that she saw Jimes stop his vehicle on Dudley before undertaking to cross Line; that after the collision Dr. Herold's car ran into a vacant lot at southeast intersection corner of Line and Dudley, and was then backed into Dudley and stopped. Excepting these statements, her testimony has no real bearing upon the material facts of the accident.

Dr. Herold's version of the facts of the accident is this: That he was on his way to a social card party at the home of a friend living on Ockley drive, a street intersecting Line avenue 211 yards south of Dudley drive; that he was not going over 25 miles per hour and had begun to reduce the momentum of his car before the acci-

dent in order to turn into Ockley drive, which, as stated heretofore, is 211 yards south; that he saw Jimes on his motorcycle up Dudley a short distance, sounded his horn, and observed that Jimes stopped on or near the white "Stop" line across Dudley, 13 feet from Line; that he did not reduce the speed of his car on account of Jimes' presence, but, having the right of way, he assumed Jimes would recognize his right of precedence to the intersection, and consequently proceeded on; that when the front wheels of his car were at or very near the north edge of the intersection (which would be on a line projected across Line avenue from the two north corners of Dudley drive), the motorcycle suddenly (in Dr. Herold's language) "shot out in front of me like a skyrocket." He states that in order to try to avert a collision he quickly applied his brakes and steered his car abruptly to his left towards Dudley drive; that Jimes was making a gradual turn into Line, apparently trying to cross in front of his car, in order to gain the east side thereof, but ran his vehicle into the right front fender of the car. Jimes' body was hurled to the pavement, landing about 2 feet east of the east rail of the car track. The motorcycle rested between the two rails, 4 feet apart, near the center of the intersection.

We think Dr. Herold in error in some material parts of his evidence. Line avenue at the intersection is but 30 feet wide from curb to curb, while Dudley is 26 feet wide. If he is correct, his car only had to move about 15 feet while Jimes' vehicle had to go fully 30 feet to the point of collision. Jimes had to go from stop, while the doctor's car was already in motion at a much more rapid rate than the motorcycle would go immediately from stop. If his version of the accident and the location of the car and motorcycle immediately prior thereto were correct, the probabilities are he could have crossed the intersection safely before the motorcycle reached the center thereof. Skid marks, clearly shown to have been impressed upon the pavement by Dr. Herold's car, began 47 feet north of the intersection. These confirm the doctor's testimony to the effect that his right wheels were running on or near the west rail of the car track, and that he made an abrupt turn to his left in an effort to go into Dudley drive to avert the impending collision. We are convinced that the car was moving at a rate of speed greatly in excess of 23 miles per hour, the maximum fixed by the city's laws. It is pertinent here to remark that this law in all parts of the city is observed only in its breach. To now drive an automobile on a much-traveled street of a city at a speed not greater than 23 miles per hour, instead of being an aid to the safety of traffic, more nearly amounts to interference therewith.

■ The deceased was employed as a delivery man for a drug company whose place of business was on Line avenue, some five blocks north of Dudley drive. He well knew traffic conditions on the street, and that traffic thereon had the right of way over that entering it from the sides. He observed the stop sign on Dudley from which point Dr. Herold's car could and should have been seen by him, not over 75 feet away. The day was clear and there were no obstructions of any kind in the line of vision between him and the moving automobile. There were no other cars near the intersection when the accident occurred. Jimes' having stopped before entering the intersection virtually extended invitation to Dr. Herold to avail himself of the right of precedence the law gave him to proceed into and across the intersection, and any negligence, or violation of the traffic law by him, prior to that moment, cannot and does not constitute a proximate cause of the accident. It is only where a violation of a law is the, or a, proximate cause of an accident or injury that the violation constitutes actionable negligence, and even in such case for an injured person to recover he must be free from contributing to the accident. Huddy on Automobile Law, 3–4, §§ 34, 35; Berry on Automobiles (6th Ed.) vol. 1, § 230, p. 202; Collier v. Frank Varino & Co., 153 La. 636, 637, 96 So. 500; Hudson v. Jackson Brewing Co., 4 La. App. 549; Smith v. Interurban Transportation Co., 5 La. App. 704; Sparks v. Hanagriff, 15 La. App. 553, 131 So. 302.

■ The ordinance of the city making Line avenue a right of way street provides that all traffic entering it from side streets "shall come to a full stop before entering the intersection and proceed with caution." Jimes observed the first part of this law, but violated the latter part. It was his legal duty to have seen Dr. Herold's car and to have remained still until it had cleared the intersection; instead of

doing this, he chose the hazardous course of trying to gain the east side of Line avenue by hurriedly crossing it in the path of the oncoming car, thereby being guilty of negligence of the grossest character which, in our opinion, was the proximate cause of the collision.

The case of Moore v. Liddell Bros. Candy Co., 155 La. 1018, 99 So. 856, is very much similar in facts to the present one. The syllabi of that case are as follows: ·

"That defendant's. motor truck, which collided with motorcycle killing rider, was being driven on wrong side of ·road would not render defendant liable for death, unless it was the proximate cause of the accident.

"Where plaintiff's decedent riding motorcycle collided with defendant's truck and was killed act of deceased in coming out of quiet street into much-traveled one and, without looking or giving warning, turning suddenly into path of truck which had turned to left to pass vehicles in front, was· negligence barring recovery."

The present case is really stronger for defendant because here Line avenue is a right of way street, whereas Texas avenue, involved in the Moore Case, was not so designated by law; and, in addition, in the present case Jimes actually stopped his motorcycle before entering Line and is held to have seen Dr. Herold's car approaching, while in the Moore Case the motorcycle operator did not stop, because the law did not require him to do so before entering Texas avenue, and it is not shown that he knew of the presence of the truck he ran into before doing so.

The following cases are pertinent of the questions involved: Heartfield et ux v. Kory (La. App.) 158 So. 869; Marsiglia v. Taye et al. (La. App.) 158 So. 589; Jos. Chalona Co. v. Smith (La. App.) 158 So 237.

In Arena v. Morris & Co., 14 La. App. 563, 130 So. 565, it was held, quoting syllabus: "When two vehicles approach intersection at approximately same time, driver having right of way is entitled to· proceed, and it is culpable negligence for other to cross."

It is contended by plaintiff that had Dr. Herold's car been on his right side of the avenue when Jimes undertook to cross it, he would have averted the collision by driving straight ahead. It is not clearly shown that such would have been the case. The car's position in the street ceases· to be of primary importance since Jimes' own negligence brought about an emergent situation. He, without due care for his own protection, elected to abandon a place of safety and adopt a course involving great hazard to himself and others. The moment Dr. Herold observed that he would attempt to cross the street in front of his own car, he did what might have been expected of him or of any other prudent person in like situation, that is, endeavored to avoid a collision by rapidly driving his own car into Dudley drive; that he failed to cover enough ground to avert the collision does not expose him to responsibility for damages resulting from his failure to do so. It has often been held, in fact is fixed in our jurisprudence beyond question, that in an emergency one is not expected to exercise the same sound judgment as he would under normal conditions. Faced with a sudden emergency such as Dr. Herold was confronted with, the operator of a car has to think and act quickly, and if in the exercise of his mental faculties, under such circumstances, he errs, it would be an unfair rule that would hold him responsible in damages following injury traceable to the error. The whole matter , does, and properly should, recur upon the primary negligence of the one bringing about the emergency.

Courts should be, and we think always are, reluctant to reverse a jury's verdict in a suit to recover damages, and when close questions of fact are involved, the weight of the verdict should be duly recognized. However, in the present case we experience no difficulty in determining the true facts of the accident, and our conclusions thereon, when applied to the law applicable thereto, relieve Dr. Herold from liability. We do not think the last clear chance doctrine has application to facts as we find them to be in the case.

For the reasons herein assigned, the verdict of the jury in this case is set aside and the judgments appealed from, based on said verdict, are hereby annulled, avoided, and reversed; and plaintiff's suit is dismissed at her cost. It follows from this decree that the judgment in favor of the intervener and against plaintiff is set aside and annulled, at intervener's cost.