## COLEMAN v. NEW ORLEANS PUBLIC SERVICE, Inc., et al. *

### No. 16821.

Court of Appeal of Louisiana. Orleans.

Nov. 29, 1937.

Howard W. Lenfant, of New Orleans, for appellant.

Ivy G. Kittredge and Alvin R. Christovich, both of New Orleans, for New Orleans Public Service, Inc.

Bernard J. Bagert, of New Orleans, for George Ivy.

WESTERFIELD, Judge.

Plaintiff was injured on April 27, 1937, while a passenger in a bus belonging to the New Orleans Public Service, Inc., when the bus collided with an automobile owned and operated by George Ivy, at the intersection of S. Claiborne avenue and Leonidas street. She brought this suit against the New Orleans Public Service, Inc., and George Ivy, claiming $276.10, for pain and suffering, loss of time, and medical expense.

There was judgment below in plaintiff's favor awarding her damages in the sum of $51.10 as against the defendant George Ivy and dismissing her suit as to the codefendant, the New Orleans Public Serv-

*Rehearing denied Dec. 13, 1937; writ of certiorari denied Feb. 7, 1938.

ice, Inc. From that judgment she prosecutes this appeal seeking to hold both defendants liable in solido and asking for an increase in the quantum.

■ No appeal was taken by the defendant Ivy, therefore, the only question before us, so far as he is concerned, is the sufficiency of the award.

S. Claiborne avenue is a boulevard measuring at the scene of the accident 148′ 8″, having a wide neutral ground in the center and two roadways, about 30 feet wide on each side, the one on the right or lake side being devoted to traffic moving in the direction of Jefferson parish, which we will hereafter refer to as the Jefferson Roadway, and the one on the left or river side being used by traffic moving in the opposite direction or toward the center of the city of New Orleans, which we will call the New Orleans Roadway. The passenger bus entered the intersection from the direction of the Mississippi river and crossed the New Orleans Roadway, the neutral ground, and had entered the Jefferson Roadway, when it was struck by the Ivy automobile which was being driven away from New Orleans and towards Jefferson parish.

The charges of negligence against the driver of the bus are:—(1) Excessive speed; (2) failure to keep a proper lookout or to maintain proper control of his vehicle; and (3) failure to stop before entering the "lower roadway of S. Claiborne Avenue."

We will consider these charges of negligence in inverse order. It is admitted that the driver of the bus failed to stop before entering the Jefferson Roadway. The allegation of negligence in this respect is based upon subparagraph (s) of section 10 of article VI of the Traffic Ordinance, No. 13702, C.C.S., which reads as follows:

"On streets and avenues having neutral grounds and carrying street car lines, vehicles crossing such neutral grounds shall have right-of-way to complete the crossing of the roadway of such street or avenue under the following conditions:

"Provided the vehicle shall come to a full stop when about to leave the neutral ground and enter the roadway, shall signal with horn, and give opportunity for approaching vehicles in the roadway to come to a stop, it being the intention of this provision to require vehicles in said roadway to stop upon receiving reasonable warning in order that vehicles standing on the neutral ground shall be permitted to complete the crossing of or turning into the roadway."

Subparagraph (a) of section 8 of article VI of the traffic ordinance provides that S. Claiborne avenue from Canal street to the Jefferson parish line shall be a through street and that "every operator of a vehicle, street car or other conveyance traveling on any street intersecting any through street or boulevard shall stop such vehicle, conveyance or street car at the place where such street meets the prolongation of the nearest property line of such through street or boulevard, subject, however, to the direction of any traffic control sign or signal, or any police officer at such intersection."

■ There are no street car tracks on S. Claiborne avenue in the vicinity of the accident, but counsel for plaintiff contends that because of the wide neutral ground the first quoted provision of the traffic ordinance should apply. In this contention we believe he is in error. See Goff v. Southern Coffee Mills (La.App.) 144 So. 513.

The situation, it seems to us, is controlled by the second quoted provision which requires the operator of a conveyance traveling on a street intersecting a through street to stop at a point where the intersecting street meets the prolongation of the nearest property line. It is admitted that the driver of the bus stopped before entering the New Orleans Roadway, consequently, so far as this provision of the ordinance is concerned, it was complied with.

The driver of the bus, though he claims to have looked to the right or in the direction from which the Ivy car was approaching the intersection, did not see it. He did see a passenger bus about three-quarters of a block away which was traveling in the same direction as the Ivy car, and explains his failure to see the Ivy automobile by suggesting that it was behind the bus at the time he looked in that direction. Plaintiff invokes the doctrine that one must be held to have seen that which he could have seen. Gibbons v. N. O. Terminal Company et al., 1 La.App. 371. Other witnesses did see the Ivy automobile and we conclude from a digest of their testimony that, at the time the bus entered the second or Jefferson Roadway, the Ivy car was about one-half of a city block or 150 feet away from the intersection. Was the bus driver negligent in entering the roadway

under those conditions? In Simpson v. Pardue et al., 15 La.App. 341, 131 So. 854, 855, we said: "It must be conceded that the primary duty of avoiding the collision rested upon the plaintiff, since he was driving his car on the less favored street. He was required to keep a lookout for vehicles on the favored street. He should have had his car under control, and should have exercised more care and caution than the driver on the favored street. However, he was not required to wait before attempting to cross until there was no vehicle in sight on the favored or right-of-way street, and it was only necessary that it should appear that there was a reasonable safe opportunity to proceed. His action in crossing the intersection must be considered in the light of the surrounding circumstances, and, if the Packard, which was on the favored street, was at such a distance from the intersection as would suggest to the mind of a reasonably prudent person that the crossing might be undertaken without danger of collision, he was justified in doing so. The only evidence in the record on this point is that given by the plaintiff himself, who says that, when he started across, the Packard was about 210 feet or seventy yards away. * * * As to the propriety of plaintiff's conduct, we are of the opinion that in attempting to cross under the circumstances prevailing he was not guilty of contributory negligence."

There is nothing whatever in the evidence to support the charge that the driver of the bus was guilty of excessive speed. He had stopped his bus before entering the New Orleans Roadway and had slowed down on the neutral ground, shifting his gears and, according to the testimony of all of the witnesses in the case, was going very slowly, in fact, one witness criticizes the bus driver on the ground that if he had gone a little faster he might have avoided contact with the Ivy car which struck him just before he had completed the crossing at the intersection.

Our conclusion is that the accident was caused by the imprudence, excessive speed, and want of care of the codefendant, Ivy, and that the driver of the bus was without fault, consequently, the judgment releasing the New Orleans Public Service, Inc., from liability is correct.

As to the quantum, the plaintiff suffered bruises and contusions of the back, right shoulder, and right leg. She was treated by her physician, Dr. Sims,

who sent her a bill for $6. She was unable to work for three weeks and lost $18 or $6 per week in wages. She spent $2.10 for medicine. The judge, a quo, allowed all these items and added $25 for pain and suffering. We believe the amount awarded for pain and suffering was somewhat inadequate and that it should be increased to $100. The judgment, therefore, will be amended to that extent.

For the reasons assigned the judgment appealed from is amended so as to increase the amount awarded plaintiff as against the codefendant, George Ivy, from $51.10 to $126.10. In all other respects it is affirmed.

Amended and affirmed.