**FINKELSTEIN v. UNITED STATES FIDELITY & GUARANTY CO. et al. * _**

**No. 17017.**

Court of Appeal of Louisiana. Orleans.

Oct. 31, 1938.

Michel Provosty and John F. Connolly, both of New Orleans, for appellants.

Walter M. Barnett, Jr., and Scott E. Beer, both of New Orleans, for appellee.

WESTERFIELD, Judge.

Abraham Finkelstein brought this suit against Michel Provosty and his insurance carrier, United States Fidelity & Guaranty Company, claiming $160 as damages sustained by his automobile as the result of a collision which occurred on September 28th, 1937, when his Plymouth Sedan, driven by his wife, Mrs. Finkelstein, collided with a Studebaker automobile belonging to the defendant Michel Provosty and, at the time of the accident, driven by his wife. Plaintiff charges that the accident was solely due to the negligence of Mrs. Provosty and defendants place the blame for the accident upon Mrs. Finkelstein. Defendant Michel Provosty reconvened claiming $45 as damages sustained by his Studebaker car.

The trial judge rendered judgment in favor of plaintiff as prayed for and dismissed the reconventional demand. From this judgment an appeal was taken to this court.

The accident occurred in the intersection of Octavia and Freret Streets at about noon. Mrs. Provosty was driving the Studebaker car along Octavia Street and, according to her version of the accident, at a very reasonable rate of speed. As she neared the intersection of Octavia and Freret Streets, she testified that she reduced the speed of her automobile to about fifteen miles per hour and looked in both directions, up and down Freret Street, without seeing any automobiles approaching and that she started across the intersection and had almost succeeded in crossing it when she was struck on the right hand side at a point near the rear door by the Plymouth car driven by Mrs. Finkelstein, which was going up Freret Street at a very high rate of speed.

On the other hand, Mrs. Finkelstein testified that she approached the intersection of Octavia Street at fifteen miles per hour;

*Rehearing denied Nov. 14, 1938.

that because of the presence of a large house which obscured her view she could not see the Studebaker car until she had reached the intersection when, in an effort to avoid the collision, she turned to the right and "sideswiped" the Studebaker, her car, the Plymouth, stopping at the point of the collision and the other car continuing on. She says that Mrs. Provosty entered the intersection at a speed of about forty miles per hour which was unabated at the time of contact between the two vehicles.

Mrs. Finkelstein had the right of way, Paragraph (b) of Section 10, Article VI of the Traffic Ordinance No. 13,702 C.C.S., but Mrs. Provosty claims, however, to have pre-empted the intersection by having reached it first and by almost having completed the crossing. Balsamo v. Hall, La. App., 170 So. 402; Bethancourt v. Bayhi, La.App., 141 So. 111; Simpson v. Pardue, 15 La.App. 341, 131 So. 854. She did not see the Plymouth car approaching though she looked both ways, up and down Freret Street, as she started across, but, if she looked, she must have seen the Plymouth for it was there. The Studebaker was on Octavia Street and, on that street, near the intersection with Freret Street, there was a traffic sign bearing the legend "Slow-Dangerous Corner". Article 1 of the traffic ordinance contains the following with reference to such signs: "Wherever the word Slow appears in this ordinance or on any official traffic sign, it shall be mandatory that the speed of a vehicle shall not exceed eight miles."

Mrs. Provosty testifies that she reduced her speed to fifteen miles per hour which is more than the traffic ordinance authorizes, but two disinterested witnesses appearing on behalf of plaintiff, Frank Hutton and Milton Hingle, who were taxicab drivers standing closeby, testified that she was traveling much faster. These witnesses say that the Studebaker was going thirty to forty miles per hour and that its speed was not diminished as it entered the intersection. It is true, that a police officer by the name of Ulysses Terrebonne, testifying on behalf of the defendants, first said that the Studebaker was traveling very slowly and the Plymouth very fast, but subsequently he stated that both cars were going about the same speed—fifteen or twenty miles per hour. This witness, however, had defective eyesight and was directing traffic at the corner of Freret and Joseph Streets, more than 300 feet away from the scene of the accident,

We conclude that the preponderance of the evidence favors plaintiff's version of the accident to the effect that Mrs. Provosty entered the intersection at an excessive rate of speed and without keeping a proper lookout.

In Marsiglia v. Toye et al., La.App., 158 So. 589, we said [page 590]: "We find it impossible to understand how Mrs. Toye could have looked in the direction of the Marsiglia car without seeing it. If it was running very fast, it was most imprudent to attempt to cross its path; if slowly, it must have been very near the intersection and equally dangerous to attempt to 'beat it across.' If Marsiglia blew his horn, as he says he did, Mrs. Toye did not hear it, doubtless because of an impairment of her hearing, with which she is shown to have been afflicted. We do not intend to say that a driver crossing a right of way street and colliding with a vehicle in the intersection must necessarily be negligent, whether he violates the traffic ordinance, or not, but we do believe that it would be an extreme case, such as the pre-emption of the crossing, under circumstances which would indicate that the driver entered the intersection when it was reasonably safe to do so, which would relieve him of the imputation of negligence. The mere fact that he had managed to cross more than half the width of the right of way street would not, of itself, be sufficient. He must have started to cross at a time when the condition of traffic on the right of way street was such that a reasonable person would be justified in the conclusion that he could traverse the intersecting right of way thoroughfare with safety. Under such circumstances, if a collision occurs with a vehicle on the right of way street, the fault rests solely with the driver of such vehicle, because it was reasonably apparent that his path was obstructed at a time when, with reasonable care, he could have prevented the accident".

In Goff v. Southern Coffee Mills, La. App., 144 So. 513, in considering a similar situation, we observed [page 514]: "On the upper river corner, which was the corner over which, had there been no obstruction to the view, either driver could, had he looked, have seen the other vehicle approaching, there was a large wooden building, which extended to the property line

off both streets. This placed upon the drivers, particularly on the one who did not have the right of way, the duty of exercising extraordinary care before emerging into the intersection. Though there is some conflict in the evidence, we believe that it conclusively appears that Goff did not stop and did not look at a point from which he could have seen the truck approaching. Had he done so, it is inconceivable that he would have driven into the path of the on-coming truck. It may be that the truck was approaching at a speed in excess of that permitted by law, though the evidence on this point is clearly with the defendant, nevertheless, unless the speed was greatly in excess of the legal limit, Goff, had he looked and had he seen the truck coming, would have realized the danger of emerging from his position of safety."

Our conclusion is that the plaintiff should recover. The amount of damage to plaintiff's car does not appear to be in dispute.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.