The judgment appealed from is affirmed, with costs.

### D. H. HOLMES CO., Limited, v. KRON.
### No. 13868.

Court of Appeal of Louisiana. Orleans.

Feb. 15, 1932.

Frymire & Ramos, R. R. Hagen, and C. L. Stiffell, all of New Orleans, for appellant.

Henry J. Rhodes, of New Orleans, for appellee.

WESTERFIELD, J.

Plaintiff appeals from a judgment dissolving a seizure of defendant's wages under garnishment process. The lower court held that defendant was a laborer and his earnings exempt from seizure under article 644, Code Prac., as amended by Act No. 79 of 1876 and Act No. 184 of 1918.

Defendant is employed by the United Shoe Machinery Company at a weekly salary of $19. His duties, as stated by himself, consist of keeping the warehouse "where we work at clean" and opening "boxes of stuff that comes in and I stack it upon the shelf." He also testified that he helped the shipping clerk and, when he is told to, makes out order blanks for the shipping clerk and "slips" for the delivery of packages.

The contention of plaintiff is that, in helping the shipping clerk and in making out orders for delivery of packages, defendant must be considered to be a clerk and not a laborer.

In Commercial Credit Company v. Parrett, 6 La. App. 423, where we held that a motorman was a laborer, the subject is reviewed at length. We said in that case that the fact that a laborer in the discharge of his duties must exert some mental effort does not affect his status as a laborer and render his wages subject to seizure. In other jurisdictions, it has been held that a shipping clerk, an overseer, a forwarding clerk, a private secretary, a teacher, and a telephone operator are laborers within the meaning of acts exempting the wages of laborers from garnishment. See authorities cited in Commercial Credit Co. v. Parrett, supra.

In the instant case defendant received $19 a week for opening boxes and putting their contents on shelves and for helping the shipping clerk occasionally. It seems clear to us that the trial court properly held that he was a laborer within the meaning of our laws exempting laborers' wages from seizure under garnishment process.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.

### HILL v. MICKEL.*
### No. 4087.

Court of Appeal of Louisiana. Second Circuit.

Feb. 16, 1932.

*Rehearing granted March 16, 1932.

McHenry, Montgomery, Lamkin & Lamkin, of Monroe, for appellant.

Theus, Grisham, Davis & Leigh, of Monroe, for appellee.

STEPHENS, J.

The plaintiff, Dr. C. H. Hill, individually and for the use and benefit of his minor daughter, Evelyn Hill, brought this suit to recover $15,075 for damages and injuries alleged to have been sustained by reason of an automobile collision which occurred about 7 p. m. on July 3, 1930.

The plaintiff alleges that his daughter was riding as a guest on the rear seat of an automobile driven by Dale Cobb; and that, while said automobile was traveling south on the Monroe-Alexandria highway, the defendant, Joseph Mickel, entered said highway without stopping, from a side road, and carelessly and recklessly drove his automobile into the path of the automobile being driven by said Cobb, thereby causing a collision, which resulted in severe and permanent personal injury to his daughter.

The defendant answered, denying liability, and averred that the accident was not due to any negligence on his part, but was due solely to the negligence of the driver of the automobile in which plaintiff's daughter was riding, in that he was not keeping a proper lookout ahead; that he did not keep to the right side of the highway and was driving at an excessive rate of speed.

Defendant further averred, in a supplemental answer, that plaintiff's daughter was a self-invited guest, or guest by sufferance, and assumed the risk of riding in the automobile driven by Cobb, as she was on a joint adventure with him. Defendant further pleaded the doctrine of the last clear chance, and contributory negligence on the part of plaintiff's daughter, in that she did not complain of the impending danger or of the rate of speed at which the automobile was being driven, and failed to warn the driver of the approach of defendant's automobile on the side road.

The trial of the case in the lower court resulted in a judgment in favor of plaintiff, for the use and benefit of his minor daughter, in the sum of $1,250, with legal interest from judicial demand until paid, and costs of court. From this judgment the defendant appealed.

After the perfection of the appeal, the plaintiff appeared in this court and moved that the case be remanded in order that further testimony may be adduced relative to the extent of his daughter's injuries; and, in the alternative, answered the appeal, praying that the amount of the award be increased to at least $5,000.

The accident out of which this suit arose occurred, as alleged, on July 3, 1930, at about 7 o'clock p. m. at a point on the Monroe-Alexandria highway where a side road approaching from the west joins, but does not cross it. At that point the highway runs north and south and is about 30 feet wide. It is graveled, and bordered on both sides by ditches about 18 inches in depth. The side road is about 22 feet wide and intersects the highway at approximately right angles. A concrete culvert in the ditch on the west side of the highway permits the side road to join the highway with a level unbroken surface. Directly opposite the intersection and culvert, and on the east side of the highway, there is a three or four plank bridge across the highway ditch which provides access to a nearby railroad.

On the side road a short distance from its intersection with the highway there is a sign plainly visible to traffic approaching the highway, reading: "Stop, Main Highway."

There is no obstruction to view in the angle formed by the main highway north of the intersection and the side road. Persons approaching the intersection on either road forming the angle can plainly see, uninterruptedly, traffic on the other road for a distance of several hundred feet from the intersection.

On the afternoon of the accident, plaintiff's daughter, Evelyn Hill, Clydie Cox, Marjorie Buce, and Curtis Averette, all young people, were invited by Dale Cobb to accompany him in his father's automobile on a trip from West Monroe, La., to Olla, La. The purpose of the trip was to attend a Baptist encampment in progress at the latter place, and participate in the entertainment to be given by the choir of the West Monroe Baptist Church. They left Monroe about 6 p. m. Dale Cobb was driving the automobile, which was a Buick four-door sedan. On the front seat with him was Miss Buce; and the rear seat was occupied by Miss Hill, on the right, Miss Cox on the left, and Mr. Averette in the middle.

At a distance of about 300 feet from the intersection above described, while the Buick was being driven south on the main highway at about forty to forty-five miles per hour,

Dale Cobb saw (and so did every member of the party) an automobile on the side road about 100 feet from the intersection and approaching it from the west at a speed variously estimated to be from five to twenty miles per hour. Dale Cobb immediately began blowing his horn and continued to do so intermittently almost to the scene of the accident. Cobb, having every reason to believe that the defendant, whom it developed was driving the approaching automobile, a Dodge sedan, both heard and saw him, and would yield the right of way, proceeded down the highway with but slightly decreased speed. The defendant, however, did not stop, though he afterwards admitted that he saw the Buick, but drove directly into its path. At that moment the Buick was only about 50 to 75 feet away, and its driver was thus suddenly and unexpectedly confronted with a perilous emergency. In his judgment at the moment, and he had no time to deliberate, he concluded that he could not stop in time to avoid a collision, the effect of which the defendant's automobile would have received broadside had he attempted to stop and failed. He further concluded that he could not drive to the right and behind the defendant's automobile without striking the concrete culvert and going into the ditch; so he swerved to the left in an effort to pass in front of the defendant's car. The result was that the head end of defendant's Dodge automobile struck the right rear door of the Buick as it attempted to pass, and knocked its left rear wheel into the ditch where it was caught and held fast by the plank bridge. The Buick being thus suddenly stopped, its occupants were catapulted out of it to the left.

██ In our opinion, the defendant, as stated, did not stop his car before entering the intersection, which was a violation of section 23 of Act 296 of 1928. But if it be conceded that he did stop, his moving at a slow rate of speed from a side road into a main highway, after having stopped, with a rapidly moving automobile approaching, plainly in view, and in dangerously close proximity, was gross negligence which caused an emergency that relieved the driver of the approaching car of the duty of exercising cool and deliberate judgment in determining what course was best to pursue.

If the driver of the Buick made a mistake in choosing the proper course of action when confronted with the emergency, his mistake under those circumstances cannot be charged against him as negligence. He was suddenly confronted with an impending peril which demanded, not thoughtful deliberation, but immediate action.

In referring to a driver of an automobile in a similar situation, this court in Buckner v. Powers, 12 La. App. 630, 125 So. 744, 748, said:

"He acted quickly and under impulse. One in peril, or who sees another in peril, when immediate action is necessary to avoid it, cannot exercise the same presence of mind and cool deliberation as under other circumstances. In a case note found in 27 A. L. R. page 1197, it is stated:

"'The well-settled rule, stated in the earlier annotation, that an automobile driver, who by the negligence of another, and not by his own negligence, is suddenly confronted by an emergency and is compelled to act instantly to avoid a collision or injury, is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a position might make, even though he did not make the wisest choice, is supported by the following recent cases.'"

The proximate cause of the accident was the negligent driving of the Dodge automobile by the defendant, slowly and deliberately from a place of safety into a position of peril. He should have yielded the right of way to the driver of the Buick. His failure to do so was a violation of the statute and his duty to plaintiff.

As stated, if the driver of the Buick was in error in the action taken under the circumstances, it was not negligence in law. A careful study of the record convinces us, however, that said driver made no error in the course of action he pursued. If he had undertaken to stop, the probabilities of success were very slight. Had he failed, he would have struck defendant's car broadside with doubtless fatal results to its occupants. If he had turned to the right he may have struck the rear of defendant's car, and certainly would have struck the concrete curb with doubtless fatal consequences to the occupants of his own automobile. The course he pursued, it is true, caused serious injury, but no fatalities; and the fact that he came near accomplishing its purpose speaks well for the quickly conceived judgment of Dale Cobb. We find no negligence on his part which contributed to the accident.

We have carefully reviewed the evidence on the question of quantum of damages, and do not feel disposed to disturb the finding of the trial judge.

██ The impact of the collision and the sudden arresting of the forward motion of the Buick threw plaintiff's daughter to the ground with considerable force. She suffered severe bruises and contusions to her limbs and body, which caused her much pain. She sustained a fracture of the lower part of the pelvis bone on the right side. At the time of the trial the fracture had nicely healed. She received a laceration of the upper eyelid, rotated upward and backward; and also a laceration of the lower lid, rotating outward and forward, and the two joined about an inch from the outer angle. Fifteen stitches were taken

in order to approximate the edges of the lacerations. The resulting scar was apparent at the time of the trial, but the testimony is to the effect that it will become less noticeable in time as the scar tissue whitens. She complained that she could not see well out of the eye which had suffered the injury to the lids, but her testimony in this respect was not corroborated by an occulist.

The award of $1,250 allowed by the trial judge, we think, fairly approximates the damages sustained.

The plaintiff's motion to remand to take further evidence on the extent of his daughter's injuries is overruled, for the reason that there is no sufficient showing made that the evidence now sought to be adduced could not have been discovered with due diligence before the original trial.

The judgment appealed from is affirmed.