RICHIE et al. v. NATCHITOCHES OIL MILL et al.

No. 5584.

Court of Appeal of Louisiana. Second Circuit.

Jan. 28, 1938.

Arthur C. Watson, of Natchitoches, for appellants.

Russell E. Gahagan, of Natchitoches, for appellees.

TALIAFERRO, Judge.

Plaintiffs, the mother and father of Arthur Richie, deceased, bring this action

against Phanor Metoyer, the Natchitoches Oil Mill, Inc., and its insurer, American Mutual Liability Insurance Company, to recover damages sustained by them on account of the son's accidental death, alleged to have been caused by the carelessness and negligence of said Metoyer, admitted agent and employee of the oil company.

The accident occurred in the daytime on Mill street in the southern part of the city of Natchitoches, La., near the plant of the oil company. At the locus of the accident, Mill street is surfaced with 22 feet of gravel. Its entire width is over 30 feet. The oil mill property borders its west side, and between the road and the buildings there intervenes a level area, several feet wide, of practically the same elevation as the road. The road is straight for over 100 yards north, and for a greater distance south, of the place of the accident.

Arthur Richie was driving a Ford truck southerly on the street, laden with small pine logs. Metoyer was also driving a Ford truck, with large built-up body, loaded with four tons of cotton seed. He had come with his load from north of the oil mill site, and had just completed weighing the truck with load on scales of the oil company, on its land, immediately west of the said street. He drove southerly off of the scales with the intention of discharging the seed about a hundred yards below. To do this, it was necessary that he again get on the street, as it led to his destination.

There is considerable difference in the testimony of witnesses regarding the position of this truck with reference to the street proper and the distance it had gone into the street when the Richie truck collided with it. It is certain the seed truck was struck a glancing blow. It had not straightened out on the street when hit. Its left side faced Richie.

We quote the gravamen of the petition anent the alleged negligence of Metoyer, viz.:

"That Phanor Metoyer had weighed the seed that were on the truck he was driving at the time of the accident and after doing so he drove out into Mill Street with his truck with the intention to make a swing around and on into the yard or enclosure of the mill through a gate and that he did so without looking in either direction and without giving any warning whatever of his intention to do so; that he drove into said Mill Street immediately in front of the truck being driven by the son of petitioners as aforesaid. That when he drove into said Mill Street, your son's truck was so close that their son could not go around the truck driven by Phanor Metoyer on either side nor could he stop his truck; all of which caused the collision and killed their said son as aforesaid.

"They show that the said accident and resulting death of their son was solely due to the negligence and carelessness of Phanor Metoyer in the following respects, to-wit:

"(a) That he drove his truck out into the line of traffic on Mill Street in the face of the approaching log truck.

"(b) That he did not keep a careful lookout in either direction along said Mill Street.

"(c) That he was operating a truck without proper brakes.

"(d) By creating such an emergency that Arthur Richie couldn't avoid striking the seed truck.

"(e) That alternatively if Phanor Metoyer did see the approaching log truck, then he was negligent in starting his truck out into Mill Street or not stopping same if he had already started."

Defendants deny that the accident was due to any extent to the negligence or lack of care of Metoyer. The blame therefor is charged to Richie. The acts of negligence on his part, averred to have been the cause of the collision, are these:

(1) That he was driving his truck at an excessive and dangerous rate of speed, in contravention of the laws and ordinances of the city of Natchitoches.

(2) That a fraction of a second before the impact, Richie swerved his truck to his right and sideswiped the Metoyer truck, which, at the time, was no more than 2 or 3 feet over on the street; and was moving not over 5 miles per hour.

(3) That the truck was not equipped with adequate brakes and that Richie was not maintaining a proper lookout for traffic on or about the street ahead of him.

(4) That the logs were improperly and negligently bound to the truck, in that the chains which held them together were not passed around the coupling pole or fastened to the truck in a substantial manner; that this negligence was the proximate cause of Richie's death.

These enumerated acts of negligence are, in the alternative, pleaded and relied upon by defendants to defeat plaintiff's suit. Defendants further allege, in the alternative, that Richie had the last clear chance to avert the accident. Amplifying this plea, it is said: That the Metoyer truck was near the west edge of the street, moving slowly, when the collision occurred; that the street there is over 30 feet wide; that there were no other motor vehicles near the scene to interfere with vision from a hundred yards north and down to the locus of the accident; and, if Richie had been keeping the required lookout, he would and could have observed these conditions in time to swerve his truck to his left and avoid the collision.

Plaintiffs were awarded judgment for $6,161.50. All defendants appealed suspensively. Plaintiffs, answering the appeal, pray for increase in the amount of the judgment. In brief, they urge that appellants be penalized for prosecuting a frivolous appeal.

Four witnesses, besides the truck operators, claim to have seen the accident. Three of these were young men who had brought a cow to the scales to weigh, immediately after Metoyer drove his truck off of it. They were all about the scales at the time of the collision.

There is no serious dispute as regards the movement and course of the Richie truck as it covered the more than 100 yards of straight, unobstructed street north of the locus of the collision. It was on and held to its proper side of the street. There is serious conflict concerning the movements, course, and position of the Metoyer truck as it approached and entered the street from the level area on its west side. These three witnesses largely agree in their testimony. There are some variances, however. If this were not true, if they did agree in all details and particulars, there would be substantial ground for viewing their testimony with suspicion. They all testified that Metoyer drove the truck slowly from the scales towards the street, as they passed him with the cow, and that he stopped at the margin of the street, some 25 or 30 feet from the scales, rolled a cigarette, lighted it, and began to smoke; and that following these acts he immediately put the truck in gear and drove it, some say suddenly and rapidly, into the street and across the path of the other truck at a slight angle. The circumstances, the location, and character of injuries to the Metoyer truck, and rational inferences deducible therefrom, in our opinion, support these witnesses' version of the facts. The right end of the pine logs struck the back of the Metoyer truck's cab; its left fender and running board were partly torn from their connections and turned up; the wheels interlocked. In this relation to each other, they continued at an angle to their right, down the street, and partly on to the mill company's land and rested.

Metoyer's version of his movements immediately prior to and at the time of the accident is clearly reflected from the following testimony given by him, viz.:

"Q. After you drove off of the scales on the occasion of the accident what did you do? A. When I drove off I started in double low, and as I got off of the scales I opened the door and looked back, and I did not see anything, and I eased off and I throwed it in first and at that time it struck me."

He denies that he stopped at the street's edge and denies that he rolled and lighted a cigarette. He says that he opened the door and looked back, by which he means northerly, up the street from whence Richie came. He saw nothing and proceeded to enter the street and "at that time he struck me." If the case were to be decided solely on Metoyer's own testimony, we would experience little difficulty in finding his negligence to be the sole cause of the accident. From his own lips frankly and spontaneously come words sufficient to base such a decision upon. If he looked, he did not see that which he should have seen; that is, the Richie truck very near him. He discharged but half the duty imposed upon him by law when he looked only. He was legally bound to see what he could have seen by a reasonable exercise of the sense of sight. Owens v. Tisdale, La.App., 153 So. 564.

The three witnesses at the scales, either expressly or inferentially, say that Metoyer did not look to his left up the road when he put his truck in gear following the lighting of the cigarette. We think this to be true. To have done so, it was necessary that he lean to his left for 18 inches or 2 feet, to see beyond the corner of the truck's body. Had he done this, he would have discovered that conditions on the road had changed from what

it was as he drove off of the scales. The lapse of two or three minutes, while preparing and lighting the cigarette, was sufficient time for many vehicles to have entered upon the tangent of the road north of him. Having consumed this much time before undertaking to put his entire truck on the street, he was not warranted in assuming that traffic conditions to his left justified his doing so. He knew that traffic on the street had a right of way over that entering from the oil mill property, and was legally required to exercise the utmost care and caution before driving thereon.

The testimony of the fourth witness to the collision does not affect the conclusion we have reached as to responsibility for the accident.

Considering the situation from the viewpoint of Richie, the negligence of Metoyer becomes more apparent. He was traveling at a rate probably not over 20 miles per hour. Some witnesses place the speed at more, while others think it less. His load was heavy. The logs were stacked on the truck and short trailer and bound with chains. This necessarily affected the ease and ability with which the vehicles could be handled in case of emergency. It behooved him, as he was doing, to carefully drive on his side of the street. As he entered the straight section of the street north of the accident, the seed truck, with large, high body, was plainly in view. It had stopped by the side of the street, to all intents and purposes, to allow him (Richie) to pass. He doubtless construed this action, as he was warranted in doing, into an invitation to pass, and, having the right of way, he was clearly within his legal rights in attempting to do so. See Jimes v. Fidelity & Casualty Co., La.App., 163 So. 421, and cases therein cited.

The load of logs slid or was thrown from the truck about the moment the trucks stopped. Whether Richie jumped from the truck or was knocked off by the impact does not appear. The logs were held together near their ends by two strong chains around them. The load bodily fell from the truck, near the center of the street, and crushed young Richie to death. The chains were filed to remove the logs from his body.

We find no merit in the contention that the logs were negligently bound to the truck. It is true the chains did not go around the coupling pole, as was the former practice among loggers. The practice was largely abandoned on account of the serious damages to a truck, sure to follow overturning with a load. The Richie truck was equipped with four steel bumpers, 8 inches high, one of which was at each end of the cross-arms. The lower logs rested on the cross-arms and were held in place by the bumpers. These were fastened to the cross-arms by means of chains of less strength than those which bound the logs together. These bumper chains broke, and this allowed the logs to bodily leave the truck without overturning it. Even though it should be held that the logs were negligently bound to the truck, such negligence could not possibly be construed to be a proximate cause of the accident. The same may be said of the speed of the Richie truck, granting that it was traveling in excess of legal rate. Violation of a law is negligence per se, but not actionable unless it be the or a proximate cause of injury or damage. There is also no merit in the contention that deceased had the last clear chance to avoid the accident.

The deceased was twenty-two years of age when killed. His parents were not wholly dependent upon him for support. The truck he was operating was owned jointly by him and his father. The logs were being hauled for their joint benefit. He made monthly contributions to his parents, but the record does not disclose that there was a necessity for so doing. The father appears to have been able, physically, to engage in remunerative employment. All things considered, we conclude that the quantum fixed by the lower court adequate.

This appeal is not frivolous. The case has been assiduously prosecuted here. Counsel's oral argument is supported by copious brief disclosing much labor and study in its preparation. It reflects a feeling of confidence on part of counsel in the soundness of his position and the justness of the cause he represents. In these circumstances, it would not only be absurd but grossly unjust to penalize the appellants.

Judgment affirmed.