## AUSTIN v. BAKER–LAWHON & FORD, Inc., et al.

### No. 5740.

Court of Appeal of Louisiana. Second Circuit.

Jan. 10, 1939.

Rehearing Denied March 8, 1939.

Writ of Certiorari and Review Denied May 1, 1939.

Sholars & Gunby and G. Allen Kimball, all of Monroe, for appellants.

Theus, Grisham, Davis & Leigh, of Monroe, for appellee.

HAMITER, Judge.

A delivery truck owned by Baker-Lawhon & Ford, Inc., and driven by its employee, James Marshall, collided with a Plymouth sedan belonging to the Standard Gin & Manufacturing Company, Inc., and operated by its president, Joseph T. Austin, at the intersection of Jackson and Dixie streets in the City of Monroe, Louisiana. The collision occurred at about 3:30 o'clock of the afternoon of April 26, 1937, and produced serious injuries to Mr. Austin. Immediately following the accident one Oscar Lee Dunn was picked up at the scene in an unconscious and injured condition. Previous thereto he had been sitting on a bench in front of a store located on the southeast corner of the intersection. The sedan was damaged to the extent of $562, while the truck sustained damages in the amount of $87.73.

The Employers Casualty Company was the insurer of the Plymouth sedan. In view of its having issued a collision policy thereon, containing a $50 deductible clause, it paid to said Standard Gin & Manufacturing Company, Inc., the amount of the sedan's damage, less said $50, or the sum of $512, and was subrogated to the insured's claim.

Mr. Austin instituted this suit against the truck's driver, its owner, and its insurer, the latter being the Trinity Universal Insurance Company, to recover damages for the personal injuries which he received.

The Standard Gin & Manufacturing Company, Inc., brought suit against the same defendants, Standard Gin & Mfg. Co., Inc., v. Baker-Lawhon & Ford, Inc., et al., La.App., 188 So. 420, seeking to be

compensated for the $50 damage claim that its collision policy excluded.

Employers Casualty Company v. Baker-Lawhon & Ford, Inc., et al., La.App., 188 So. 421, is a proceeding instituted by the Employers Casualty Company against the same defendants to recover the $512 paid to its insured as above shown.

In another suit, Dunn v. Baker-Lawhon & Ford, Inc., et al., La.App., 188 So. 415, Oscar Lee Dunn claims damages, for his asserted injuries, from the aforenamed defendants and also from Joseph T. Austin and the Employers Casualty Company.

Appropriate allegations of negligence are made in the various pleadings of the parties litigant in the several causes, and the issues respecting the cause of and responsibility for the accident with its consequences are squarely presented. We deem it unnecessary to detail the various allegations of negligence.

A reconventional demand is urged by Baker-Lawhon & Ford, Inc. It asks judgment thereunder against Austin, the Standard Gin & Manufacturing Company, Inc., and the Employers Casualty Company for $87.73, the amount expended in repairing its truck.

The four cases were consolidated in the district court and tried together. They have been argued and submitted in this court in like form.

Each of the plaintiffs was awarded a solidary judgment against defendants James Marshall, Baker-Lawhon & Ford, Inc., and the Trinity Universal Insurance Company. Oscar Lee Dunn's was for $378, Joseph T. Austin's for $3711, and the other plaintiffs, the Standard Gin & Manufacturing Company, Inc., and the Employers Casualty Company, for the respective amounts prayed for by them. Dunn's demands against Austin and the Employers Casualty Company were rejected. Also rejected was the claim in reconvention of the Baker-Lawhon & Ford, Inc.

Suspensive appeals were prosecuted by James Marshall, Baker-Lawhon & Ford, Inc., and the Trinity Universal Insurance Company. Answers to the appeals have been filed in this court by Dunn and Austin, in which increases in the awards in their favor are asked.

As before stated, the vehicles collided in the intersection of Jackson and Dixie streets in the City of Monroe, Louisiana, on the afternoon of April 26, 1937. The weather was clear and the streets dry. Jackson runs north and south, while Dixie intersects it at right angles and extends east and west. The former is a paved thoroughfare, having a width of 40 feet in the intersection and 36 feet from curb to curb. The latter is a graveled passageway with an average surface width of 19 feet.

An ordinance of the City of Monroe, in force and effect at the time, grants to vehicles traveling on Jackson the right of way over those from intersecting streets, and states that:

" * * * any person driving a vehicle from any intersecting street across or into any street above enumerated (including Jackson) shall bring the vehicle to a full stop at a point not more than fifteen feet from the right of way street and not proceed until he has ascertained that no vehicle is traveling the right of way street sufficiently near to the intersecting street to render collision or accident probable; * * * "

James Marshall, while admittedly in the course of his employment, drove his truck along Dixie in an easterly direction, and brought it to a stop at a point a few feet off the western edge of the pavement of Jackson. While so stopped an automobile traveling in a northerly direction on Jackson, and driven by one L. J. Smith, turned left into Dixie street in front of Marshall and proceeded thereon toward the west.

It is the testimony and contention of Marshall that after the passage of the Smith vehicle he placed his car in low gear, caused it to "drift down" into the intersection, and stopped it with the front wheels on the pavement and the remainder thereof still over and on the gravel of Dixie; and that while thus completely stopped Mr. Austin, who was traveling south on Jackson street at a fast rate of speed, drove his Plymouth sedan into the truck.

The preponderance of the evidence and the physical facts of the case, however, do not, in our opinion, favor the version of the accident as given by said truck driver. Our findings of fact, which practically agree with those of the trial judge, are that Marshall proceeded slowly into the intersection in low gear, after the Smith car had turned into Dixie street, and caused his truck to strike the Austin machine. Mr. Austin, who was driving south on Jackson, observed the truck stopped on

Dixie, while he was some distance away, and had approached to within approximately 50 feet from the intersection when it proceeded onto and across Jackson and into his path of travel. The speed of the sedan at the time was not excessive, it being about 25 miles per hour. Either Marshall did not look to the left before going onto the pavement or did not heed the oncoming car after observing it in close proximity to him. While at the edge of the pavement his view of Jackson street for a considerable distance north of the intersection was unobstructed. Mr. Austin attempted to avoid the collision by steering to the left, but as he reached the center of the intersection the truck's front end plowed into the right side of his sedan. Thereupon the latter vehicle caromed to the southeast corner where it struck a post and a bench, and came to a stop on the east side of Jackson a short distance south of Dixie street. Its rear wheels rested near the curb, while its front was facing toward the west. The truck, after the crash, fronted in a southeasterly direction with its front wheels about the center line of Jackson and several feet south of the exact center of the intersection.

Indicative of the fact that the impact occurred near the center of the intersection, instead of at its west edge as Marshall contends, was the location of glass found on the pavement. Windshield and headlight particles were scattered close to such center, while those from broken beer bottles, which fell from the rear end of the truck, were noticed a few feet east of the western edge of the pavement. Undoubtedly these bottles dropped on the occurrence of the collision, for there was nothing else to cause their dislodgment. As the truck was approximately 22 feet in length, and the bottles fell from its rear end, the front portion obviously was at or near the center.

Defense counsel point out that "the left front fender and light of the truck were mashed in almost flat against the side of the hood and radiator, its left hub cap knocked off, the left front wheel and axle knocked out of line toward the front, the front part of the frame knocked out of alignment from its left, and the left end of its heavy bumper bent outward from the front of the car several inches from its normal position"; and it is contended that the truck "having its left bumper and axle bent several inches forward and its

left front hub cap knocked off gives conclusive evidence of the fact that it was struck from the left by the car as Austin attempted to speed around in front of Marshall". As before stated, it is our belief that the truck ran into the sedan. A photograph of the latter machine, which is a part of the record, discloses a deep imprint of the truck's front bumper in the back portion of its right front fender and in its right front door. Also, we notice that the door post on said right side was pulled outwardly and toward the rear, and the rear door, fender and wheel on such side were severely damaged. It is apparent to us that the left end of the truck's front bumper hooked said door post, after striking the side, causing the right rear end of the sedan to swing into and against the front left wheel and fender of the truck and resulting in the damage described by defense counsel.

 In our opinion Marshall was grossly negligent in the operation of his truck, and his negligence was the sole and proximate cause of the collision. Whether he did or did not see the approaching Austin machine, which was a very short distance away as he began his entrance into the intersection, is immaterial; for he is legally charged with seeing that which he should and could have seen. It was his duty to respect the right of way privilege that the driver of the sedan enjoyed under and by reason of the above referred to city ordinance. His violation of that duty and ordinance constituted negligence, and such negligence being a proximate cause of the accident is actionable. If he had delayed his entrance until the passing of the sedan, no collision would have resulted. Hill v. Mickel, La.App., 139 So. 672; Jimes v. Fidelity & Casualty Co. of New York, La.App., 163 So. 421; Carkuff v. Geophysical Service, Inc., La.App., 179 So. 490; Richie v. Natchitoches Oil Mill, La.App., 178 So. 752, 755.

 Further, it is our belief that Mr. Austin was not even partially responsible for the mishap. The evidence, as we appreciate it, discloses that he was driving at a speed not in excess of 25 miles per hour. Granting, however, that he was exceeding slightly the legal rate, as defense counsel contend, such speed was not a proximate cause of the accident. The collision was inevitable in view of the maneuver of the truck. "Violation of a law is negligence per se, but not actionable unless

**420**

it be the or a proximate cause of injury or damage". Richie v. Natchitoches Oil Mill, supra.

 The fact that plaintiff steered his car to the left in an effort to avoid being struck, instead of attempting to stop or to run behind the truck, is of no moment. When some distance away from the intersection, Mr. Austin observed the truck at a standstill off the western edge of the pavement. It pursued that status as he came closer. A right of way street was being then used by him, and he was justified in assuming that his superior privilege would be recognized by the waiting truck driver. Lucas v. Andress, 17 La.App. 329, 136 So. 207. However, when within fifty feet of the street crossing the, truck was set in motion and it began its forward course. This brought about an emergency, and Austin, who had not caused it, was not legally required to select the proper course to pursue. He was relieved, under the prevailing circumstances, of employing cool, sound and thoughtful judgment. His failure to act wisely and correctly in the perilous situation did not constitute negligence.

The doctrine of the last clear chance has no application here. It is urged in connection with the reconventional demand of Baker-Lawhon & Ford,. Inc. The record is not convincing that Mr. Austin could have avoided the collision after noticing the truck's appearance in the intersection.

Mr. Austin· did not appeal from the judgment, but he complains, through an answer to defendants' appeals, of the asserted inadequateness of the quantum decided upon by the district court. On the other hand, defendants urge the excessiveness of the award. Plaintiff was 61 years of age at the time of the accident. Serious and painful injuries were sustained by him. There was some impairment of the sight and hearing of his right eye and ear, respectively. For this he was granted $2500. Also, he sustained numerous cuts and bruises on several members of his body, particularly on his knees, and his back was injured. An allowance of $1000

was provided for these injuries and for his pain and suffering. The remaining portion of the total award consisted of medical expenses in the amount of $211. Although we are satisfied that considerable pain, suffering, discomfort and inconvenience resulted from and attended the injuries, we are not prepared to say that the trial court incorrectly adjudicated the matter of quantum. His fixing, therefore, will not be disturbed.

The judgment appears to be correct and it is affirmed.