Plaintiff brought this suit against the Aetna Life Insurance Company and Thomas W. Hudson to recover the sum of $21,805.54 for personal injuries received by him and medical expenses incurred by reason of an accident on October 11, 1941, just after six o'clock P.M., in the City of Baton Rouge, when the car which plaintiff was driving south on North Eighteenth Street was struck by a car driven by defendant Hudson going west on Boyd Avenue. The Aetna Life Insurance Company was joined in the suit on the theory that Hudson, at the time of the accident, was the agent of the Company and acting within the scope of his employment, but it is conceded by plaintiff that there was not sufficient evidence to hold this company liable for the acts of Hudson.
The trial judge rejected the demands of plaintiff against both defendants, and he has only appealed from that part of the judgment which rejected his demands against Hudson.
There is not a great deal of dispute as to how the accident happened. Plaintiff was driving south on North Eighteenth Street, a right of way street, at 18 or 20 miles per hour. Hudson was driving west on Boyd Avenue, an unfavored street, at from 25 to 30 miles per hour. There is a sign on the right of Boyd Avenue just before reaching the intersection of North Eighteenth Street placed there under a city ordinance reading from the top down: "Through-Stop-Street." Hudson did not stop or slacken his speed on entering the intersection and ran into the front part of the left side of plaintiff's car as the latter *Page 288 
was crossing on its right or west side of North Eighteenth Street, and while the Hudson car was about the center of Boyd Avenue. Plaintiff entered and proceeded across the intersection at a speed of 18 or 20 miles per hour. He did not see the Hudson car until it struck his car. Whether or not plaintiff looked to his left before crossing the intersection is not very clear, but he admits that he did not see the Hudson car before it struck the left side of his car.
It appears that this intersection is rather narrow, and on the northeast corner there is a board fence, making it what is usually called a blind corner. A motorist going south on North Eighteenth Street can not see to his left out Boyd Avenue until he reaches the intersection, and, of course, the same obstruction affects the view of a motorist entering the intersection from the east on Boyd Avenue. The record does not show the width of either street, but a witness who was following closely behind plaintiff testified that he could not see the Hudson car for more than 25 or 30 feet before it struck plaintiff's car.
There seems to be little question as to the negligence of Hudson. Indeed, he admits his negligence when he says that he did not see the stop sign and did not slow down his car or make any effort whatever to recognize the right of way street. It is clear that plaintiff not only had the right of way but entered the intersection before Hudson. He was not going as fast as Hudson, yet he had gotten more than half way across the intersection when the Hudson car struck his car near the left door. The trial judge found that plaintiff was guilty of contributory negligence in not looking to his left and not slowing down as he approached the intersection.
The law to be applied in determining whether or not plaintiff was guilty of such contributory negligence as to bar his recovery is concisely and correctly stated in Blashfield's Cyclopedia of Automobile Law and Practice, vol. 2, Perm.Ed., § 1032, pp. 216, 217, as follows:
"An automobilist, with knowledge of the location of a stop sign, has the right to rely, when crossing the intersection, on the assumption that any one approaching will observe it, and similarly a traveler on a boulevard or arterial highway has a right to expect an operator of a motor vehicle on an intersecting street to stop before entering thereon, and, with that expectation in mind, the operator of the automobile on the favored street can proceed forward while the other traveler on the intersecting street stops at the sign. If, however, the driver on the favored street sees, or in the exercise of due care should see, that the other vehicle neglected to make the stop required by law, he may himself be under a duty of stopping to avoid a collision at the crossing, at the risk of having his recovery defeated by reason of his being contributorily negligent."
Plaintiff had a right to assume that any car approaching from the east would observe the law and come to a complete or virtual stop before entering the right of way street, and he could indulge this assumption until he saw or should have seen that the other car had not or was not going to observe the law. The very purpose of placing the stop sign at the intersection was to assure motorists on the right of way street that a motorist on Boyd Avenue would come to a stop before entering the intersection and ascertain that traffic on the right of way street was in such condition as to permit a safe crossing. If it was the duty of plaintiff to stop or slow down before entering the intersection in order to ascertain that motorists on Boyd Avenue were going to observe the stop sign, as the trial judge seems to have held, there would be little use in placing such signs at the intersection of right of way streets. The very purpose of placing a stop sign at this blind corner was to assure motorists approaching on the right of way street that they could proceed across without stopping if they reached the intersection first.
If plaintiff did not look to his left as he approached the intersection, as the evidence seems to indicate, he was guilty of negligence in that respect. But whether or not that negligence would bar his recovery depends on whether or not it was a proximate cause of the accident. The inquiry then becomes necessary as to whether or not if he had looked and seen what he should have seen by the exercise of reasonable care the accident could have been avoided. If not, he is still entitled to recover.
As already stated, plaintiff could not have seen the Hudson car coming from his left until he was right at the intersection. As plaintiff entered the intersection first, it is *Page 289 
obvious that he had no opportunity of ascertaining that the driver of the Hudson car was not going to stop, or had not stopped for the sign, until he (plaintiff) had entered the intersection. When plaintiff entered the intersection, the driver of the Hudson car had not then violated the traffic regulation by failing to slow down or stop. Assuming that it was the duty of plaintiff to have seen that the Hudson car was not going to stop just as soon as that car passed the stop sign and entered the intersection, yet he could not have avoided the accident as he went only a few feet — just a little over a car length — before he was struck by the Hudson car going at a speed of 25 to 30 miles per hour.
Among the cases cited by the trial judge and defendant's counsel in support of the contention that plaintiff was guilty of contributory negligence are those of Morlas v. Toye Bros. Yellow Cab Co., La.App., 148 So. 730, and Schloss v. Reymond, 11 La.App. 390, 122 So. 721, 723. Neither of these cases presents a situation similar to the facts in the present case. In the first cited case a taxicab entered Claiborne Avenue, a right of way street, without stopping as required by ordinance. The driver of plaintiff's car on Claiborne Avenue was about half a block away when the taxicab slowed down at the intersection but continued into the intersection and had almost completed the crossing when it was struck near the rear end by the plaintiff's car. As the court well said, the driver of plaintiff's car had ample time to see the taxicab coming into the intersection ahead of her and to stop her car before running into the taxicab near its rear end after it had almost completed the crossing.
In the other case of Schloss v. Reymond, plaintiff's driver on a right of way street could have seen the defendant's car 25 or 30 feet up the intersecting street, and the court found that if plaintiff's driver had "looked northward he could not have helped seeing Mr. Reymond, and if he had had his car under control he could have avoided the collision." The difference in that case and the present one is obvious because, as the court found, the plaintiff's driver could have seen the car coming into the right of way street in time to avoid the accident had he kept a proper lookout, while in the present case, as has been said already, plaintiff could not have seen the Hudson car in time to avoid the accident had he looked to his left as he entered the intersection.
Our attention is also called to the recent case of Genovese v. Daigle, La.App., 17 So.2d 736, where we held a motorist driving on a right of way street guilty of contributory negligence in approaching an intersection at an excessive speed and in failing to keep a proper lookout. The facts in that case are also different from the facts in the present case. In the cited case, the motorist on the right of way street could have seen the defendant approaching on the unfavored street in ample time to enable him to bring his car under control had he been keeping a proper lookout. Moreover, in that case the defendant entered the intersection first and was proceeding across when his car was struck on its left side by plaintiff's car approaching at an excessive speed on the right of way street.
Our opinion is that the proximate cause of the accident was the gross negligence of Hudson in ignoring the stop sign and in proceeding across the intersection at an excessive speed and without giving proper attention to approaching traffic on the right of way street. See Pender v. Bonfanti, La.App.,13 So.2d 105; Austin v. Baker-Lawhon Ford, Inc., et al., La.App., 188 So. 416.
Plaintiff received rather serious injuries. He suffered multiple fractures of the pelvic bones, concussion of the brain, and contusions and brush burns of the entire body. He was unconscious for several days and remained in the hospital for over a month, and wore a body cast for several months which caused considerable discomfort. He suffered a great deal of pain, and was unable to carry on his work as a tile setter for some nine months. According to his doctor, he has about a twenty five per cent permanent disability.
Plaintiff incurred medical expenses aggregating $1805.54, and lost about nine months from his work in addition to the impairment of his earning capacity. He is forty-five years of age and was earning a very good income before his injury. He says that he was compelled to hire a man to work in his place for about nine months at an average expense to him of $56 per week, and he claims to have lost considerable profits in his tile business on account of the injury, however, his testimony as to loss of profits is too vague and indefinite *Page 290 
to serve as a basis for damages on that item. Under ordinary circumstances, he would be entitled to very substantial damages for pain and suffering, permanent partial disability, and loss of past and future earnings.
In fixing damages of this nature it is proper to consider the financial responsibility of the defendant, his earning capacity and whether or not he is protected by insurance. Cole v. Sherrill, La.App., 7 So.2d 205. It appears that the defendant is not protected by insurance and his earning capacity is limited. We feel constrained to consider these factors in assessing the damages and will fix the amount much lower than we would if the defendant were protected by insurance, or if his financial worth and earnings were sufficient to enable him to respond in greater damages. In addition to his medical expenses, we have decided to fix his award for all other items of damage at $4000.
For the reasons assigned, it is ordered that the judgment appealed from be and the same is hereby annulled, reversed and set aside, and it is now ordered that plaintiff have and recover judgment against the defendant, Thomas W. Hudson, in the full sum of $5805.54, with legal interest thereon from judicial demand until paid, and for all cost of the suit in both courts.