McBRIDE, Judge.
On October 22, 1953, at about 7 o’clock a. m., there occurred a collision between a Ford V-8 automobile-truck and a Pontiac sedan in about the center of the intersection formed by the outgoing traffic lane of Bien-ville Street and the downtown traffic lane of North Carrollton Avenue. Each Of these streets is a wide thoroughfare having two paved roadways bisected by a neutral ground. The front part of the truck, which was traveling on Bienville Street in the general direction of the lake, ran, into'the right side of the Pontiac.sedan at about its right front door with the result that the-sedan was toppled over on its left side;.and three persons who were guest passengers therein were injured, and they each filed a suit claiming a substantial amount as damages in solido from Christopher Evans, the owner of the truck, Leslie Evans, its driver, and The All State Insurance Company of Chicago, Illinois (the correct corporate name of this defendant is Allstate Insurance Company), which is the liability' insurer of John S. Bowers, the owner and operator of the Pontiac. The plaintiffs in their several petitions attribute the accident-to the joint negligence of the drivers- of both vehicles, and among other acts of negligence it is charged that each driver failed to maintain a proper lookout and attempted to negotiate a crossing of the intersection at a time when it was unsafe to do so. .Of-course, the allegations of negligence are denied by defendants. The three suits were consolidated for the purposes of trial -and a separate judgment.was rendered in each case.
Each one of the three plaintiffs recovered a judgment only as against Leslie Evans, the operator of the truck, and for an amount substantially less than the amount for which he prayed in his petition. The suits as against Christopher- Evans and Allstate Insurance Company- were dismissed.
A separate appeal was perfected by each plaintiff, and in this opinion we shall deal with the suit of Harold Ryan in which 'he claims $5,280.50 for his personal injuries, medical expenses and loss of wages. The amount of his judgment was $780.50.
This case is quite different from the ordinary damage suit arising from, an aittomo-bile collision in that the testimony of the witnesses is free from- the usual contradictions -apd, inconsistencies. Neither Leslie Evans, who operated the truck, nor Bowers, who was driving the Pontiac sedan, ever saw the other vehicle until the exact moment of the crash. They admit as much.
When Leslie Evans approached the corner of North Carrollton Avenue he was confronted with an official traffic sign which required that he bring his .vehicle to a stop before making entry into 'the intersection. Both he and Gillen, who was riding in the truck, stated that the truck was brought to a stop in obedience to the sign and then Evans shifted the gears and started forward into North Carrollton Avenue at a slow rate of speed. The trial judge was satisfied that Leslie Evans not only did not stop before entering the intersection but that he proceeded onward blindly without looking or listening. However, it would make absolutely no difference whether Leslie Evans did or did not stop his truck for he was guilty of negligence in either respect. If he brought his vehicle to a stop, there was the most wanton negligence on his part in proceeding from a position of safety into North Carrollton Avenue without ever seeing the approaching Bowers automobile; and if he made no stop, his negligence is too obvious to discuss. But howsoever great the negligence of Leslie Evans was, such is not to be imputed to Christopher Evans, who owns the truck, and he is not liable in damages for the reason that he had loaned the vehicle to Leslie Evans who was going about his own per-sonál- business and was not the agent or *129 servant of Christopher Evans at the time of the accident.
As has been said, John Bowers was driving the Pontiac sedan on North Carrollton Avenue.toward downtown, tajid he had in his car Ryan, Breaux and Eiswirth as guest passengers having picked them up earlier that morning for a trip to the place of their common employment in St. Bernard Parish. The composite testimony of the four men is that as the Pontiac sedan approached Bienville Street it was traveling at a speed somewhere between 25 and 35 miles an hour, and the import of the testimony is that the attention of Bowers and his passengers was directed to something on ‘ the opposite side of North Carrollton Avenue or to their left. Bowers made the rather unimpressive statement that he looked to his right to see what traffic approached on Bienville Street but that he saw nothing. This forces us to the firm belief that Bowers did not make any observation into Bien-ville Street at all for had he looked surely he would have seen the Ford V-8 truck which was there to be seen and which easily could have been seen had he looked.
Breaux and Eiswirth also say that they never saw the truck until it- hit their car, but Ryan, who was seated on the right side of the rear seat, states that when the Pontiac was just about entering the inbound traffic roadway of Bienville Street, he looked across the neutral ground and saw the truck in the opposite lane. He estimates that when he first saw the truck in the other lane the Pontiac was about 49 .feet away from it and that the truck had already passed the stop sign and its front bumper was protruding into Carrollton Avenue. Ryan sensing the dangerous potentialities of the situation “hollered ‘Look out truck!’ ” The other occupants of the car, including Bowers, say they heard Ryan’s outcry. Bowers made no attempt to avert an accident with the truck and. he readily admits that up until the very moment of the crash he was totally oblivious of the other vehicle in or about the intersection and that the crash came as a complete surprise to him.
Counsel for the insurer argue that Bowers was free of negligence because he was operating his car at a lawful rate of speed and had proceeded to cross the intersection only after having made observation to his right which disclosed there were no vehicles approaching from that direction. In answer to that argument we can only say that we do not believe- that Bowers ever looked to the right because had he focused his eyes in'that direction he certainly could not have failed to notice the Ford truck on Bienville Street.
Counsel make the further argument that Bowers had the legal right to assume that the operator of the Ford truck would comply with the sign which faced him as he reached North Carrollton Avenue by bringing the truck to a complete stop before endeavoring to make a crossing of the roadway.
There is no question that in this state there is a well-settled doctrine that a motorist who is proceeding on a right-of-way street, upon approaching an intersection where traffic is required under a - city ordinance or warning sign to come to a complete stop before entering the intersection, should not be held to the same degree of care and vigilance as if no ordinance "existed- or no stop signs had been erected. The danger at such an intersection is not as great as at a corner where no stop signs have been erected, and it follows less care is required of the driver on the favored street. .The motorist on the right-of-way street, with knowledge of the existence of such a stop sign, has a perfect right to assume that any driver approaching the intersection from the less-favored street will observe the law and bring his car to a complete stop before entering the intersection. Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849; Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292; Murphy v. Rowan, La.App., 84 So.2d 743; Glen Falls Ins. Co. v. Copeland, La.App., 28 So.2d 145; Termini v. Aetna Life Ins. Co., La.App., 19 So.2d 286. See also Mayfield v. Crowdus, 38 N.M. 471, 35 P.2d 291; 2 Blashfield, Cyclopedia of Automobile Law and Practice, Perm. Ed., sec. 1032, pp. 216, 217.
 But this does not mean that a motorist may drive his automobile along with *130 impunity a,nd without making the slightest effort to ascertain what the traffic cpndi-tions may be at intersections even if there he .stop signs on the intersecting streets. One driving an automobile is under the legal duty of being unceasingly vigilant and at all times attentive to what the conditions of traffic may be so as to permit him to act in the case of danger presenting itself. It would seem that Ryan, who was riding on the rear seat, was more observant than was Bowers who operated the automobile, and if Ryan from his position on the rear seat was able to see the Ford V-8 truck from a distance of 49 feet away, surely Bowers, had he been attentive, could also have sighted the truck in time to take measures toward averting the collision. Bowers was asked by the judge what he could have done to avoid the accident had he seen the truck, and his answer was that he could either have applied his brakes or swerved his car to the left or to the right.
While the cases we have cited above are to the effect that the motorist on the right-of-way street with knowledge of the location of the stop sign on the intersecting street has a right to assume that a driver approaching the intersection from the less-favored street will comply with the law by bringing his car to a complete stop before entering the intersection, the cases go further and hold that such assumption on the part of the motorist on the favored street can be indulged in by him until such time as he sees or should see that the driver of the other car has not observed or is not going to observe the law.
Bowers’ failure to see that the other driver had not complied with the law does not excuse his driving of the Pontiac sedan directly into the path of the truck and he was grossly negligent in doing so. Whatever the operator of. an automotive vehicle can see, he must see, and, in legal contemplation he does see, and his failure to observe what he could have’ seen by diligent exercise of the sense of sight does not absolve him from liability • for resulting damage to, others. Le Blanc v. Jones, La.App., 79 So.2d 750; Mansfield v. Toye Bros. Yellow Cab Co., La.App., 78 So.2d 544; La Rocca v. Dabria, La.App., 78 So.2d 541; Lewis v. New Orleans Public Service, Inc., La.App., 78 So.2d 76. Consequently, the defendant insurance company is legally liable for the damages sustained by the guest passengers in the Bowers automobile as a result of the negligence on Bowers’ part which was concurrent with the negligence of Leslie Evans who operated the truck.
As the result of the collision Ryan suffered some severe and painful injuries which were treated by Dr. George Berkett, but fortunately none proved to be of a permanent nature. They consisted of deep lacerations to the right ear, left arm, left elbow, and left ilium; his left arm remained in a plaster cast for a period of eight days and his incapacity lasted for two weeks.
Although the trial judge thought Ryan was entitled to $1,000 for personal injuries, pain and suffering, plus $52.-50 representing the medical bills, and $228 for the loss of two weeks’ wages, which aggregates a total of $1,280.50, judgment was rendered against Leslie Evans for the sum of $780.50 for the reason as stated by the judge that Leslie Evans appeared to be an impecunious Negro without any property or insurance. There is authority to warrant a court’s consideration of the defendant’s financial ability or responsibility in connection with the assessment of damages for personal injuries, and in a proper case the judgment may be rendered for a lesser amount than would ordinarily be awarded. However, this rule cannot have application in this case if for no other reason than that Allstate Insurance Company is liable in solido with Leslie Evans for the damages sustained by the plaintiffs. If one amount were to be assessed against Leslie Evans on account of his impoverished condition and a higher amount assessed against the other solidary debtor,- much confusion and legal difficulties might possibly arise in the future as at some time qr other the question of contribution as between the solidary debtors might come in for discussion.
We approve the trial judge’s idea as to the quantum of damage sustained by *131 the plaintiff as set forth in' his reasons for judgment; however, this will entail an increase in the judgment to the correct aggregate of those items, to wit: $1,280.50.
For the reasons assigned that portion of the judgment appealed from which dismisses plaintiff’s suit as against Allstate Insurance Company be and the same is hereby annulled and avoided, and it is now ordered, adjudged and decreed that the judgment be amended so as to run against Leslie Evans and Allstate Insurance Company, jointly and in solido, for the full sum of $1,280.50, and as thus amended and in all other respects the judgment is affirmed; said appellees are cast for the costs of this appeal.
Reversed in part; amended and affirmed in part.