LOTTINGER, Judge.
This is a tort action brought by Dennis C. Foster and Lena Eaves Foster, husband and wife, wherein the former seeks to recover for medical expenses and the latter seeks to recover for personal injuries received as the result of an incident which occurred on May 24, 1958 when Mrs. Foster was riding in an automobile driven by her son, Lawson O. Foster. Joined as defendants are Fidelity Mutual Insurance Company, the liability insurer of the owner of the car in which the parties were riding and Jasper D. Owers, the driver of the other automobile which was involved.
The petition recites that on the aforesaid day between 12:00 o’clock noon and 1:00 o’clock P. M. Mrs. Foster was a guest passenger of Lawson O. Foster and that they were proceeding in a 1956 automobile in a northerly direction on U. S. Highway No. 171 about ten miles north of Leesville in Vernon Parish. Just previously, Jasper D. 0\yers had been proceeding on the same highway in a southerly direction but, in an attempt to turn around, had turned to his left, or to the east side of the road. As Foster approached, Owers was in a stopped *141 position in the east traffic lane and on the east shoulder but, as Foster came closer, he commenced backing into the center of the road, causing Foster to leave the road to his left coming to a stop in a ditch on the west side. Joint and concurrent negligence is charged against both drivers, it being alleged that Foster was driving at an excessive rate, failed to have his vehicle under control, failed to have kept a proper look-out and to have seen what he should have seen and failed to slow down or stop upon seeing the Owers vehicle. Owers is alleged to have been negligent in not having his vehicle under control, in not keeping a proper look-out and seeing what he should have seen, in failing to accord Foster the right of way and by turning as he did.
No pleadings were filed' by Owers. The answer of Fidelity is in the nature of a general denial with the alternative defense (which appears to have been dropped) that Foster was acting as the agent of his mother and, if negligent, such negligence would be attributable to her. By way of amended answer Fidelity charged that the omnibus insured, Lawson O. Foster, had colluded with his mother to assist her in her claim, thus violating the policy and rendering it void.
Judgment was rendered in the court below against Owers on confirmation of default. The trial judge held that Foster was free from negligence, thus dismissing the demands against Fidelity. The plaintiffs have appealed.
The following facts are not in dispute: At the situs of the incident U. S. Highway No. 171 runs north and south. It is a hard surfaced highway and, at that point, straight and level. At the time the weather was clear and the road dry. There were four witnesses to what took place, namely Owers, who was alone and who had been proceeding south in a Ford automobile and Foster and his mother who together with one. Douglas Skinner, had been proceeding north in the Chevrolet automobile. There was, apparently, no physical evidence -.of any nature and no official investigation of the accident was made. Mrs. Foster was injured as the result of the sudden maneuver made by her son (which will be dis-. cussed later). The vehicles did not collide and each was on its way shortly afterward.
There can be no doubt as to the negligence on the part of Owers. He had been proceeding south and, upon hearing a noise and thinking that he had lost a hub-cap, decided to turn around and go to look for it. In order to effect the turn, he simply turned to his left, crossed the east lane and came.to a stop with his front wheels in the ditch on that side of the road, looked both ways and then backed out. Though the closest curve to the south was 150 yards away he never saw the Foster vehicle until it was passing him. The rear of his car was midway of the east lane and when he heard the screeching of Foster’s tires he went forward to avoid being hit. His conduct in attempting such a dangerous maneuver constitutes a gross kind of negligence which was a contributing cause of the accident.
Next presented for consideration is the question of whether Foster was negligent and, if so, whether such negligence contributed to the accident.
The witness Skinner, who was riding with Foster and his mother, stated that they were 50 to 100 yards away from the Owers car when it began backing into the road. Foster did not slow down but turned to the left, went along on the west shoulder and then turned back sharply to his right coming to a “pretty sudden” stop. The reason for the sharp turn back to the right was because of an on-coming van in the south-bound lane. He estimated Foster’s speed between 40 and 50 mph. In response to questioning by the Court this witness testified that the Owers car was at a standstill off the road- when he first saw it at a distance -of about 75 yards, but that they were only 30 or 4Q yards from it when he first saw it backing up onto, the .road. ‘
*142 Mrs. Lena Foster, one of the plaintiffs, stated that she first saw the Owers car when they were about 75 yards distant, at which time i-t was stopped partly in the ditch and partly on the shoulder. Shortly after, she saw it start to back onto the road, at which time her son continued at the same rate of speed. As the Owers car continued onto the road her son “speeded up” and “took to the shoulder” in order to get around it. On cross examination she estimated that they were 50 yards from Owers when he first started to back up. The following portion of her testimony is, we think, pertinent:
“Q. Now, Mrs. Foster, after this Owers car came out onto the highway, did your son do everything he possibly could to avoid the accident? A. Well, no sir, I don’t think he did.
“Q. Now, Mrs. Foster, going back to the time I took your deposition, the other day, did I not ask you this question: ‘And Mrs. Foster you feel like, under the circumstances, your son did about the only thing he could do to avoid hitting the car?’ and you answered: ‘Yes sir, I do.’ Now, isn’t that correct? A. Well, that was all that was left to do, or kill us all or go to the ditch.
“Q. In other words-, if he had not done what he did, he would hit the car and possibly killed all of you, is that right? A. Well, that’s the way I felt, but I don’t know if that’s right or not.”
Lawson P. Foster was called twice, once on. cross-examination by counsel for plaintiffs, and the other time on cross-examination by counsel for defendants. When he was first called he stated that he saw the Owers car for the first time when he was about 150 to 200 yards away, at which time the car was at a standstill in the ditch. He estimated his speed between 50 and 60 miles per hour. When he first saw Owers backing onto the road he slowed down a bit and then, as Owers continued onto the road, he speeded up some and turned to his left onto the shoulder. He testified that he saw a van and one or two other cars behind it but that they had nothing to do with the accident as “it was all over with before they got up tlr ere”.
When examined the second time Foster said that there was nothing to indicate Owers would back out and that he thought he saw him approaching. He estimated that he was only some 40 or 50 yards away when Owers commenced backing. The approaching van passed, he testified this time, as he was on the shoulder to his left.
With the above referred testimony before him the trial judge reached the following conclusions:
“In considering the effect of the testimony given by L. O. Foster, the son, sight should not be lost of the very natural and human impulse he had to assist his mother and father to recover. The Court gained the distinct impression listening to his testimony, that he was torn between that impulse and the natural dislike, that all men have, that is reluctance to admit that they were wrong, that is, that he was negligent. These contrary impulses, in my opinion, account for the fact that he was inclined to slightly change his testimony on material points.
“I am of the opinion that a fair attempt to reconcile all of the testimony leads to the conclusion that these are the facts:
“The Owers car was off the road, stopped, with its rear toward the pavement, when it came into Foster’s view. Foster was driving, not in excess of 60 miles per hour, the legal speed limit. He didn’t know why Owers was there, that is, he had no way of knowing that he was attempting to turn around, or whether he was stalled or ‘stuck’ in the ditch. The front end *143 of his car was in the ditch. When Foster first saw him, he did slow up, and then when it did not appear that Owers had any intention of backing onto the road, Foster resumed his speed. After Foster reached a point so close that he could not, or that it was problematical whether he could stop, Owers suddenly backed onto the highway, directly in Foster’s path. After that Foster had three alternatives, namely, (1) try to go around Owers by •swerving to the left, which he succeeded in doing; (2) try to go around him by swerving to the right, which it is shown would have been catastrophic, because Owers again reversed the direction of his car and drove back, which placed his car in the path Foster would have taken, had he swerved to the right; (3) try to stop his vehicle before reaching the point where Owers had driven onto the road. To say the best for the last alternative, is that it is very doubtful, indeed, that the accident could have been thereby avoided. Granting for the sake of argument that Foster was as much as 75 yards, or 225 feet, away when Owers started his backing movement, according to all speed charts ■available to me, and granting that his brakes were in good working order, if he was making as much as 55 miles ■an hour, it would have taken him 299.9 feet to have stopped, that is 61.4 feet reaction time to apply the brakes and 238.5 feet braking distance. Even if his speed had been but 50 miles per hour, it would have taken 235.3 feet in which to stop. Moreover, it must be remembered, Foster had no time for cool deliberation or to arrive .at a deliberate conclusion as to which ■of the alternatives to select in the ■emergency, that was not of his creation.
“The applicable rule of law is:
“ ‘When two alternatives are presented to a traveler on the highway as means of escape from a collision, either of which might fairly be chosen by a reasonable prudent person, the law will not hold him guilty of negligence in taking either, even though he does not make the wiser choice, especially where there is only time for instinctive action, since he is not bound to use an infallible judgment as to the course to pursue to avoid a collision, but only to exercise that degree of care which an ordinarily prudent person would have taken.’ (Blashfield Vol. 1, Sec. 670)
“That this rule has always been accepted and applied in Louisiana, is shown by the following cases: Smith v. Interurban Transportation Co., 5 La.App. 704; Martens v. Penton, 15 La.App. 35, 130 So. 354; Martin v. Cazedessus, 15 La.App. 100, 130 So. 129; Daigle v. Cobb, 18 La.App. 212, 138 So. 213; Pigott v. Bates, La.App., 143 So. 535; Cook v. Dance, La.App., 96 So.2d 350; Exner v. Flowers, La.App., 82 So.2d 47; Chanse v. Burley, La.App., 76 So.2d 587; Marler v. State, La.App., 78 So.2d 26.
“While, under the law, Foster would have been excusable, under the existing facts, had he failed to select the best of the three alternatives, the fact is, as I see it, he did select the best of the three and the one most likely to avoid the accident.
“Unless it is held that, under the circumstances existing,. Foster was negligent in assuming that Owers would not violate his moral and legal duty not to back his car directly into the path of oncoming traffic, it is difficult to comprehend in what respect he can be said to have been negligent.
“The applicable rule seems to be that the operator of a motor vehicle on a favored thoroughfare, has the legal right to rely on the driver of a car in a less favored position obeying *144 the law, in the absence of some warning or indication that he will not do so. Marler v. State, supra; Audubon Ins. Co. v. Levy, La.App., 73 So.2d 37; Ryan v. Allstate, La.App., 86 So.2d 126; Commercial Credit Corp. v. Serpas, La.App., 94 So.2d 83; Nix v. State Farm, La.App., 94 So.2d 457; Daly v. Employers, La.App., 15 So.2d 396; Butler v. O’Neal, La.App., 26 So. 2d 753. In the Audubon case the defendant was driving along on the shoulder of the road, going in the same direction as plaintiff. Without warning defendant turned onto the road resulting in a collision. The Orleans Court of Appeals held, plaintiff was under no duty to stop his car, having the right to rely on defendant’s duty to yield the right of way.
“Counsel for plaintiffs, in their reply brief, contend that the case from which defendant’s counsel quotes, Austin v. Baker, La.App., 188 So. 416 [419], is inapposite, because it is based on an intersectional collision. I can’t agree with plaintiffs’ counsel for the rule of law thus adhered to is the same whether applied to the facts of this case or to an intersectional collision. Counsel quotes from the opinion in that case as follows :
“ ‘Further, it is our belief that Mr. Austin was not even partially responsible for the mishap. The evidence, as we appreciate it, discloses that he was driving at a speed not in excess of 25 miles per hour. Granting, however, that he was exceeding slightly the legal rate, as defense counsel contend, such speed was not a proximate cause of the accident. The collision was inevitable in view of the maneuver of the truck. “Violation of a law is negligence per se, but not actionable unless it be the or a proximate cause of injury or damage.” Richie v. Natchitoches Oil Mill, supra [La.App., 178 So. 752].
“ ‘The fact that plaintiff steered his car to the left in an effort to avoid being struck, instead of attempting to stop or to run behind the truck, is of no moment. When some distance away from the intersection, Mr. Austin observed the truck at a standstill off the western edge of the pavement. It pursued that status as he came closer. A right of way street was being then used by him, and he was justified in assuming that his superior privilege would be recognized by the waiting truck driver. Lucas v. Andress, 17 La.App. 329, 136 So. 207. However, when within fifty feet of the street crossing the truck was set in motion and it began its forward course. This brought about an emergency, and Austin, who had not caused it, was not legally required to select the proper course to pursue. He was relieved, under the prevailing circumstances, of employing cool, sound and thoughtful judgment. His failure to act wisely and correctly in the perilous situation did not constitute negligence.’
“There is no quarrel with the rules of law announced in the several cases cited by plaintiffs’ counsel, namely, Muse v. Chambley, La.App., 16 So.2d 276; Bendish v. Roberts, La.App., 24 So. 688; Lopreore v. New Orleans Public Service, Inc., La.App., 27 So.2d 737; Davis v. Surebest Bakery, Inc., La.App., 38 So.2d 624; Redden v. Blythe, La.App., 12 So.2d 728 and several others, but the Court does not consider those cases applicable here, for the reason that in each of them there was some fact or circumstance to remove the case from the applicable rule. Plaintiffs’ counsel argue from a premise which, if correct, might support the legal conclusion drawn, but the facts we are dealing with here do not justify the premise they assume.
“My conclusion as to the facts of the case and my study of all of the ap *145 plicable jurisprudence, convinced me that Foster was in no wise negligent in anything he did or did not do that might have been even remotely responsible for the accident. It follows that recovery as against Fidelity Mutual Insurance Company must be and it is denied.
“Having reached the foregoing conclusion, it is unnecessary to pass upon the question of non-cooperation or collusion.”
We believe the above quoted reasons to be well founded in fact and law and, therefore, adopt them as our own.
For the reasons assigned the judgment appealed from is affirmed.
Judgment affirmed.