In this case the plaintiff is a negro by the name of Whese Blackburn who lives on Boyd Avenue next to the corner of North 18th Street, in the City of Baton Rouge. His house is the second from the corner. He owned a secondhand Buick automobile which he kept parked in a driveway between the house he occupied and the corner house. On the night of the accident with which we are concerned, one of the cars involved in it, after colliding *Page 697 
with the other, ran up the curb of the street, then across the sidewalk and after ramming a post of the porch of the first house on the corner, ran into the parked Buick car and damaged it to the extent of $286.20. The accident happened between 9 and 9:30 at night on January 7, 1944, at which time Blackburn was asleep in bed, so it is obvious that he had absolutely nothing to do with the happening of the accident and the resulting damage to his automobile and therefore he is bound to recover either from both of the participants in the accident or from one or the other according to what will ultimately be decided as to the negligence of both or either.
He has instituted suit against the owners of both cars and asks for judgment against them in solido. His car was insured by the American Indemnity Company which paid him his loss, less the sum of $50 deductible under the policy. He asks therefore that he recover the sum of $236.20 for the benefit of his insurer and $50 for himself.
The owners and drivers of the two cars involved in the accident are John Ainsworth and E.V. Mosely. Ainsworth was driving a Pontiac automobile on Boyd Avenue travelling west. Mosely was driving an Oldsmobile on North 18th Street going north. The collision took place at some point in the intersection of the two streets and, as already indicated, the Ainsworth car continued on from the point of impact up to the place on Boyd Avenue where it ran into plaintiff's automobile. The Mosely car after the impact, also proceeded west, in some manner, and ran in that direction some fifty steps or more on North 18th Street before being brought to a stop.
In his petition plaintiff alleges that the defendant Ainsworth was driving not less than 50 miles an hour as he approached and entered the intersection. That prior to and at the time of the accident there was a traffic "Stop Sign" on the north side of Boyd Avenue with the intersection of North 18th Street, facing east, and therefore in full view of a driver approaching the intersection from that direction. It is alleged that, going at that rate of speed, Ainsworth failed to stop as directed by the sign, all in violation of the traffic regulations of the city council for the City of Baton Rouge, and therefore was guilty of negligence in thus entering and driving across the intersection, and that his negligence was a contributory cause of the accident.
With regard to the defendant Mosely, it is alleged that had the defendant Ainsworth observed the sign, he (Mosely) would have been entitled to his superior right of way over the intersection but that he failed to observe the rate of speed at which Ainsworth was going, and the manner in which he was operating his car, or if he observed him, then he was guilty of negligence in failing to take proper precautions at the moment in order to avoid a collision.
Pleading in the alternative plaintiff then sets out that in case the acts of negligence charged against each driver cannot be supported by the evidence to be adduced on trial of the case and that the manner in which he has described the accident is not entirely accurate, that in as much as he was at his home, asleep at the time, he does not know what caused the accident and as all the facts and circumstances relating thereto are better known to both defendants, he is entitled to invoke the doctrine of res ipsa loquitur which he affirmatively pleads and that the defendants should be held liable thereunder.
On the issues as thus made up the case went to trial in the district court and resulted in a judgment in favor of the plaintiff for the sum prayed for, against the defendant Ainsworth, who alone was held liable. From that judgment both Ainsworth and the plaintiff appealed.
Ainsworth's contention on appeal is that even if he was negligent, which he insists however he was not, under the facts shown, there is no reason why the defendant Mosely should not also be held negligent. The plaintiff's contention is that both were negligent and both should be held liable.
Counsel for Ainsworth strenuously urges in argument and in brief that the record supports the contention that his client was not negligent for the reason that he was not travelling at an excessive rate of speed and that he did bring his car to a complete stop before entering the intersection and, as shown by the testimony of several witnesses produced by him, his car was struck in the northwest part of the intersection, proving conclusively that he had almost cleared it and, necessarily therefore, was the first to have entered it. It is further contended that the force of the impact was what caused Ainsworth to lose control of his car and that is why it ran over the sidewalk, into the house on the street corner and into plaintiff's automobile which *Page 698 
was parked next to that house. It is also urged that the defendant Mosely was guilty of negligence because the evidence shows that he was travelling on a rainy night with all the windows of his car up, the only vision he had being that afforded by the space over which the windshield wiper of his car operated, and notwithstanding this, he entered the intersection without taking any precaution whatsoever to ascertain if there was traffic coming from either direction on Boyd Avenue.
The contention made on behalf of Ainsworth to absolve him entirely of any negligence, would merit a lot of consideration were we able to satisfy ourselves that the facts are as they are here related. This we cannot do. In the first place the trial judge did not believe that Ainsworth stopped for the intersection in obedience to the stop sign which faced him and on this point we agree with him. Ainsworth says he did but it is scarcely possible, if he did, that within the short distance between the sign and point of impact between the two cars, his could have gotten up the speed it had to have to proceed the distance it did after the collision and produce the damage that followed. According to the testimony the stop sign is 11 feet east of the intersection. North 18th Street is about 20 feet wide. Therefore from the sign itself to the center of the street there is a distance of only 22 feet. Assuming that the collision took place, as he contends, in the northwest part of the intersection that would not add but five feet more to the distance and make an all over distance of 27 to 30 feet from the sign to the point he says the collision took place. Certainly within that short distance it would be impossible for a car to be started in motion and acquire the speed necessary to become engaged in a collision such as took place and with the resulting damage which is not disputed.
[1] Besides, we are not convinced by the testimony of the numerous witnesses produced by Ainsworth, all of them his friends, that the impact took place in the northwest section of the intersection. These witnesses did not go to the scene of the accident until the morning after it happened. It had been raining and it is doubtful that any sign of skid marks remained on the street. They refer to some broken glass which they say they observed there but it is entirely possible, from the manner in which the accident occurred, that there could have been broken pieces of glass scattered in that direction. We observe, moreover, that an officer from the city police department who repaired to the scene as soon as his office had been notified of the accident, stated that he was unable to determine the point of collision in the street as it was wet from the rain that had been falling. We conclude therefore that Ainsworth must have been travelling at a pretty rapid rate of speed, that he did not stop for the sign before entering the intersection and that he entered without properly observing if there was any traffic approaching on North 18th Street from either direction, especially from the south, for if he had looked in that direction, there was nothing to obstruct his view of the Mosely car which was then coming towards him.
The negligence of the defendant Mosely has to be determined on the amount of care with which he approached and entered the intersection under the circumstances existing at the time, notwithstanding the advantage which accrued to him by being on the favored street. He says that he was travelling at a moderate rate of speed, 15 to 18 miles per hour; that when he was 20 or 25 feet from the south line of Boyd Avenue he looked to the east for approaching traffic, saw none and then proceeded into the intersection. It was after he was half way across that the lights of the Ainsworth car flashed in front of him and the collision took place immediately.
[2] There is a filling station on the southeast corner of the intersection and although the view east on Boyd Avenue of a driver approaching from the south on North 18th Street is obstructed to some extent, the preponderance of testimony is that he can see fully half a block. According to the observation made by the trial judge who visited the locus at the request of some of the attorneys engaged in the case, the driver approaching the intersection from the south has an unobstructed vision east of the entire block for as great a distance as 13 yards from the corner. Assuming that the block east of North 18th Street is 300 feet long, as intimated in the record, it is reasonable to conclude, from all the testimony on this point, that when the defendant Mosely was 25 feet from the corner, at which time he says he looked, he could see at least 150 feet east on Boyd Avenue. Assuming also that the ratio of speed between the two cars was about three to one, as he indicated by his own testimony, and that Ainsworth was going 60 miles per hour against his 20, at that rate it took him the same time to travel *Page 699 
a fraction over 29 feet that it took Ainsworth to cover 88 feet, for it is a mathematical fact that a vehicle travelling at 60 miles per hour covers 88 feet per second. Granting that the collision took place, as Mosely says, after he had passed the center of the intersection, that means that he would have travelled approximately 40 feet from the moment he says he looked to the east for approaching traffic and saw none. During the time it took him to go that distance, the Ainsworth car, at the most, had gone but 120 feet and was bound to have been within the 150 feet which comprised Mosely's range of vision from the point where he says he looked. If he looked therefore, he should have seen the Ainsworth car and had he seen it, coming at the rate of speed he says it was going, he should have realized that the driver would not be able to obey the "stop" sign at the intersection and it then became his duty to stop in order to avoid a collision. That is the law as stated in Blashfield, Perm.Ed., Vol. 21, § 1032, page 216, on the point here involved, and also as interpreted in the recent case of Termini v. Aetna Life Insurance Company, La. App.,19 So.2d 286.
[3, 4] But the testimony in this case leaves us in serious doubt whether Mosely and his wife looked for approaching traffic at the corner, as they both say they did, or that if they looked they could have seen any. They admit that because of the rain and cold weather that night the windows of the car were all raised. That had the effect of producing a mist inside the car which settled on the glass windows as well as on the windshield. The car was not equipped with a defroster to dissipate the mist and the result was that it remained on the glass and practically obscured vision on the outside. The only clear vision the driver had at all was through the space over which the windshield wiper operated. His vision was thus concentrated in a very narrow area ahead of him and it is impossible for us to understand how he could have expected to see traffic approaching the intersection from either side of Boyd Avenue by merely looking through that area. Looking in that manner had to be ineffective and was the same as not looking at all. The situation was one which, because of the existing conditions, demanded unusual precaution on his part. With his vision, impaired as it was on approaching an important and dangerous intersection, it became his duty to exercise the greatest care, even to the extent of stopping if that became necessary, before entering and proceeding across. We are of the opinion that the defendant Mosely failed to observe the degree of care which was required of him and conclude that he should be held liable to the plaintiff for damages as well as the defendant Ainsworth.
Considerable testimony is found in the record concerning the value of plaintiff's car but it does not seem to be disputed now that he is entitled to recover the full amount prayed for and which was fully proved.
It becomes necessary for us to amend and recast the judgment appealed from so that liability may be decreed against both defendants, in solido, and for the reasons stated.
It is now ordered that the said judgment be amended and recast so as to read as follows:
It is ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Whese Blackburn, and against both defendants, John Ainsworth and Emmet V. Mosely, Jr., in solido, in the full and entire sum of $286.20, of which amount $50 is for the said plaintiff, individually, and $236.20 for the benefit of the American Indemnity Company, together with legal interest and all costs of this proceeding.