The above two cases were consolidated for the purpose of trial, but separate judgments were entered in each case. Both cases arose out of a collision between a Buick automobile driven by defendant, Mrs. Smith, and a truck owned by plaintiff, Acosta, on January 31, 1944, at the intersection of Europe and St. Charles Streets in the City of Baton Rouge. The truck was being driven by seventeen year old Virgil Braud, and Miss Ida Butler, a girl of about the same age who was in the employ of Acosta, was sitting in the truck with Braud, both of them engaged in picking up and delivering clothes to the Acosta Cleaners. Braud was driving the truck merely as a friend of Miss Butler and at her request, with the full knowledge of Acosta.
Acosta sued Mrs. Smith, her father, W.E. Marler, and the State Farm Mutual Automobile Insurance Company, the insurer of the car driven by Mrs. Smith, for damages to the truck in the sum of $490, plus the sum of $150 for the loss of the use of the truck while it was being repaired. Mr. and Mrs. Butler sued the same defendants for personal injuries received by their minor daughter, the amount of the claim being $5,105. The trial judge rejected the claim of both plaintiffs and they have appealed.
The substance of the allegations of the plaintiffs in both cases is that Mrs. Smith was driving the car of her father on a mission for him and with his consent and permission; that the said insurance company carried public liability insurance on the car driven by Mrs. Smith; that Mrs. Smith was proceeding south on St. Charles Street at a speed of some 25 miles per hour approaching the intersection of Europe Street; that the Acosta truck, driven by Braud, was going east on Europe Street and had gotten almost across the intersection when it was struck on the left side by the Buick automobile driven by Mrs. Smith; that the Buick skidded for some 18 feet, and Mrs. Smith pulled her car to the left and struck the truck broadside, throwing up her hands to her eyes when she saw that her car was about to hit the truck.
The defendants denied any negligence on the part of Mrs. Smith. They admitted that the Buick car was owned by Marler and was covered by an insurance policy issued by the defendant company and admitted that Mrs. Smith was driving the car with the consent of her father, but denied that she was on a mission for him. As an alternative plea, the defendant alleged that, if Mrs. Smith was guilty of any negligence, both Braud and Miss Butler were guilty of contributory negligence in the following respects: the driver of the truck was driving at an excessive speed, and was not keeping a proper lookout, and failed to see the Buick car when he should have seen it; he gave no warning and did not apply his brakes or slacken his speed as he approached the intersection. It is further alleged that Braud was the agent of Miss Butler, and there was a community of interest between the two and they were engaged in a joint mission.
[1] We agree with the trial judge that Mrs. Smith was guilty of negligence. She approached the intersection at a speed of some twenty miles per hour according to her own testimony, and she admits that she saw the truck approaching the intersection from her right some sixty feet away. She says she was 22 or 23 feet from the intersection when she saw the truck coming toward the intersection 60 feet away, yet she made no effort to slow down or stop until she reached the intersection, when she pulled to her left, applied her brakes and struck the truck on its left side slightly to the southeast of the center of the intersection. Her car skidded from 12 to 18 feet before striking the side of the truck, indicating that she was going at a rather fast speed.
[2] We also agree with the trial judge that young Braud was likewise guilty of negligence. He admits that he did not look to his left as he approached the intersection, although he could have seen the Buick car 40 or 50 feet before he reached the intersection had he looked. He says that he looked to his right and then looked straight ahead; that he was going from 20 to 25 miles per hour; that he was driving in second up a grade for a block or so before *Page 744 
reaching the intersection and had not shifted into first. He says that he could have stopped the truck if he had seen the car as much as 50 feet before reaching the intersection. On being asked if he had looked to his left when the car was 25 to 35 feet from the intersection and had seen the car approaching whether or not he could have avoided the accident by applying his brakes, young Braud replied "Yes, sir". He says that he kept straight across the intersection and did not see the Buick car until he was in the intersection and the car was only 10 to 12 feet away.
The truck continued on for a distance estimated all the way from 12 or 15 feet to as much as 40 feet, turned over on its right side, and came to rest facing back the way from which it had come. This indicates that the truck must have been going at a rather fast speed for its momentum to carry it so far, turn it over and reserve its direction.
[3] Miss Butler was sitting on the seat beside young Braud. She says that she was facing the driver and did not see the Buick car until they were in the intersection, and the car hit the truck on the left side. There was no reason why she could not have seen the car coming before the truck reached the intersection.
[4] Braud was driving the truck with the knowledge and consent of Acosta, and he was on a mission in furtherance of the business of Acosta. While he received no compensation for his services, yet he was as much the agent of Acosta as was Miss Butler who had charge of the truck and who was sitting in the truck with Braud directing him where to go in carrying out the mission in behalf of Acosta. We quote the following from Blashfield, Cyclopedia of Automobile Law and Practice, vol. 5, § 2914, page 34:
"Under this rule, the owner of an automobile may be liable for the negligence of one who, at his request and on his business or enterprise, drives his machine, acting in this particular as his servant or agent, whether he receives compensation therefor or not; evidence of compensation having merely an evidentiary bearing upon the question as to whether the relationship of the driver is such as to impose liability on the owner."
And Braud was acting for Miss Butler and was helping her discharge the duties of her employment at her request and with her consent. As between them, Braud was the agent of Miss Butler, and they were engaged on a joint mission. Therefore, Miss Butler is bound by the acts of negligence of Braud as well as by her independent negligence in failing to see what she should have seen and in failing to warn. Braud.
[5, 6] The only theory on which either plaintiff could recover is that the negligence of Braud was not a proximate cause of the accident. If the situation had been such that looking to the left before crossing the intersection had been ineffective, that is if Braud could not have seen the other car approaching in time to avoid the collision, there would have been some ground for holding that his negligence was not the proximate cause of the accident as we held in the recent case of Termini v. Aetna Life Ins. Co. et al., 19 So.2d 286. However, according to Braud's own admissions, his failure to look to his left was one of the direct causes of the accident, as he admits that he could have avoided the accident had he seen the other car 25 to 30 feet from the intersection and the evidence shows that he could have seen it further than that distance had he been looking as he was required to do.
In our opinion, the accident was caused by the combined negligence of the driver of the Buick car and the driver of the truck. The facts in this case are very similar to the facts in the case of Schloss v. Reymond, 11 La. App. 390, 122 So. 721, where this court denied recovery to both parties because of the combined negligence of the drivers of each car approaching an intersection.
Separate decrees will be entered in each case. *Page 745